The HOME INDEMNITY COMPANY, a New Hampshire corporation, Plaintiff,

v.

FARM HOUSE FOODS CORPORATION, a Wisconsin corporation, and the Diana Corporation, a Delaware corporation, Defendants.

Civ. A. No. 90-C-559.

United States District Court, E.D. Wisconsin.

July 30, 1991.

**1340**

Gary P. Lantzy, Kohner, Mann & Kailas, Milwaukee, Wis., for Home Indem. Co.

W. Stuart Parsons and Susan LaCava, Quarles & Brady, Milwaukee, Wis., for Diana Corp.

Michael J. McDonagh, Farm House Foods Corp., Milwaukee, Wis., for Farm House Foods Corp.

## DECISION AND ORDER

REYNOLDS, Senior District Judge.

### BACKGROUND

On June 8, 1990, plaintiff Home Indemnity Company ("Home Indemnity") commenced an action in this court against defendants Farm House Foods Corporation ("Farm House") and Diana Corporation ("Diana") alleging that they had breached a contract they entered into with Home Indemnity by not paying Home Indemnity $629,935.02 in premiums due on insurance policies for the period April 1, 1988 to April 1, 1989. Home Indemnity is incorporated in New Hampshire and has its principal place of business in New York (Complaint ¶ 1). Farm House is incorporated in Wisconsin with its principal place of business in Wisconsin (Farm House Answer ¶ 2). Diana is incorporated in Delaware with its principal place of business in Wisconsin (Diana Answer ¶ 3). Thus, this court has subject matter jurisdiction to adjudicate this dispute pursuant to Title 28 United States Code § 1332(a)(1).

On July 3, 1990, Diana answered Home Indemnity's complaint. Diana admits that it was a named insured on the insurance policies issued by Home Indemnity, but denies that it is liable for any premiums owed to Home Indemnity (Answer ¶¶ 5–6, 11, 18). Diana, however, admits that Farm House owes premiums to Home Indemnity (Answer ¶ 6). On October 2, 1990, Farm House filed an amended answer in which it admits that it is liable to Home Indemnity for unpaid premiums (Answer ¶ 6). Farm House, however, denies that the amount it owes Home Indemnity is $629,935.02 (*Id.*).

On February 28, 1991, Diana moved this court to enter an order prohibiting Home Indemnity from offering at trial the expert legal testimony of University of Wisconsin Law School Professor, Kenneth B. Davis, Jr. ("Davis"). Diana argues that Home Indemnity should be prohibited from having Davis testify at trial on his opinions concerning the question of law as to whether or not Diana's corporate veil should be pierced. On April 15, 1991, Home Indemnity opposed Diana's motion. Home Indemnity argues that the question of piercing a corporate veil is extremely complex and that the jury would benefit from Davis' expert testimony on this question.

On March 1, 1991, Diana moved this court for partial summary judgment. Diana requests this court to find that (1) the contract creating the obligation to pay premiums was solely between Home Indemnity and Farm House and (2) Home Indemnity is estopped from piercing Diana's corporate veil. On April 15, 1991, Home Indemnity opposed Diana's motion and moved this court to enter summary judgment against Farm House/Diana finding that both defendants are liable for the premiums owed on the insurance policies. Home Indemnity argues that in addition to defendant Farm House being liable for the premiums, defendant Diana also is liable because: (1) Diana was a named insured; (2) there was a de facto merger between Diana and Farm House; and (3) Diana is a mere continuation of Farm House. In addition, Home Indemnity claims that there is no dispute as to the amount owed under the policies by Farm House/Diana. On May 3, 1991, Diana opposed Home Indemnity's motion for summary judgment.

Farm House did not file a brief in opposition to Home Indemnity's motion for summary judgment. However, on April 8, 1991, Farm House moved this court to appoint a special master to determine the amount of money which was due on the insurance premiums. Farm House argues

that (1) the $629,935.01 in premiums claimed by Home Indemnity is grossly overstated and (2) that reference to a special master is necessary because the premium in question is a retrospective insurance premium whose calculation is an extremely technical and complex factual question. On April 23, 1991, Home Indemnity opposed Farm House's motion for reference to a special master and argued that calculating a retrospective premium is not a complicated matter.

On May 3, 1991, Diana moved this court for a continuance of the discovery deadline to enable it to conduct additional discovery on the question of the amount of premiums due under the policies. On May 16, 1991, Home Indemnity opposed Diana's motion on the ground that there is no genuine issue as to any material fact as to the amount of insurance premiums due to Home Indemnity from Farm House/Diana.

On May 29, 1991, Farm House moved this court to strike various portions of Home Indemnity's reply brief relating to Home Indemnity's motion for summary judgment. Farm House requests this court to strike those portions of Home Indemnity's brief which request this court to enter summary judgment against Farm House on the ground that Farm House failed to file a brief in opposition to Home Indemnity's summary judgment motion. Farm House argues that it was not required to file a responsive brief because Home Indemnity's motion was directed at a non-party: "Farm House Foods Corporation/Diana Corporation." On June 7, 1991, Home Indemnity opposed Farm House's motion, and on June 25, 1991, Home Indemnity filed with this court copies of documents generated by the insurance coordinator of Farm House, Sandra Woodley ("Woodley"), which refers to "Farm House Foods Corporation/Diana Corporation."

On July 18, 1991, Farm House sent to this court a letter in which it requested an adjournment of the September 10, 1991 trial date in this action because Farm House's general counsel had a scheduling conflict.

This court: (1) denies Diana's motion for partial summary judgment; (2) grants partial summary judgment in favor of Home Indemnity holding Farm House and Diana liable for the premiums owed on insurance policies WC–K98 54 34, BA–K98 80 59, and GL–K98 71 46; (3) denies Home Indemnity's motion for summary judgment on the amount of premiums it is entitled to under the policies; (4) denies as moot Diana's motion in limine regarding the expert testimony of Davis; (5) denies Farm House's motion for reference to a special master; (6) grants Diana's motion for a continuance of the discovery deadline to permit them to conduct additional discovery on the issue of the amount of premiums Home Indemnity is entitled to; (7) denies Farm House's motion to strike; and (8) denies Farm House's motion for an adjournment of the trial date.

## FACTS

In December of 1987, Farm House was the parent of Diana and owned approximately 56% of Diana's stock (Feb. 28, 1991 Woodley Aff. ¶ 2; Apr. 15, 1991 Lantzy Aff. Exh. 240 at 17). During December 1987, the board of directors for Diana approved a tender offer for the stock of its parent, Farm House (Woodley Aff. ¶ 3). The tender offer was made on March 3, 1988, and involved an exchange of three shares of Farm House stock for one share of Diana stock (Mar. 1, 1991 Diana Brief Exh. 37 at 1). The purpose of the tender offer was to have Diana acquire ownership of more than 50% of the Farm House shares, thereby giving Diana the power to exercise absolute control over Farm House and its operating subsidiaries (*Id.* at 4).

The tender offer was successful, and as a result of the stock exchange in April 1988 Diana's ownership in Farm House increased from approximately 22% to approximately 93%, and Farm House's ownership in Diana was reduced from approximately 56% to approximately 36% (Lantzy Aff. Exh. 240 at 17). In addition, in April 1988, Farm House sold to Diana its entire holding of Diana stock for an $18,549,000 promissory note of Diana bearing interest at 12.5% per annum (*Id.*). This note was subsequently paid off by Diana (*Id.*).

In December 1987, Farm House was interested in purchasing workers' compensation, general liability, and auto/fleet insurance for itself and its subsidiaries for the period April 1, 1988 to April 1, 1989 (Woodley Aff. ¶¶ 1–4). Farm House's insurance coordinator and the person responsible for coordinating the purchase of the insurance policies in question in this action was Sandra Woodley (*Id.*).

On January 29, 1988, Woodley met with Home Indemnity account executive Mark Hilgart ("Hilgart") to discuss Farm House's insurance needs (*Id.* at ¶ 5). Woodley informed Hilgart at this time that Diana was in the process of preparing a tender offer for Farm House whereby Diana would become Farm House's parent (*Id.*). Farm House selected Home Indemnity as its insurer, and the policies whose premiums are in dispute in this action, WC–K98 54 34, BA–K98 80 59, and GL–K98 71 46, became effective on April 1, 1988 (*Id.* at ¶ 10). Diana was a named insured for these policies (Apr. 12, 1991 Hilgart Aff. Exhs. 1 & 2).

On October 10, 1988, Woodley, on behalf of Farm House, entered into a "Premium Agreement (Incurred Loss Retrospective Plan)" ("the Agreement") with Home Indemnity which set forth the formula for calculating the retrospective premiums for the insurance policies in question (Woodley Aff. ¶ 14; Exh. 23). Neither Farm House nor Diana has paid Home Indemnity the retrospective premiums which Home Indemnity claims it is entitled to for insurance policies WC–K98 54 34, BA–K98 80 59, and GL–K98 71 46 (Complaint ¶ 5; Diana Answer ¶ 6; Farm House Answer ¶ 6).

## ANALYSIS

### I. Summary Judgment

■ Rule 56(c) of the Federal Rules of Civil Procedure provides that a federal district court shall grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions, and affidavits indicate that no material facts are in dispute and that the moving party is entitled to judgment as a matter of law. *Howland v. Kilquist,* 833 F.2d 639, 642 (7th Cir.1987). The party moving the court for summary judgment has the burden of proving that no material facts are in dispute, and the court must review the record with all reasonable inferences being drawn in favor of the non-moving party. *Becker v. Tenenbaum–Hill Associates, Inc.,* 914 F.2d 107, 110 (7th Cir.1990); *Reardon v. Wroan,* 811 F.2d 1025, 1027 (7th Cir.1987).

Diana claims that there are no material facts in dispute regarding the legal issue of whether or not it is liable to Home Indemnity for the insurance premiums and has moved this court for partial summary judgment. Home Indemnity responded by agreeing that there are no material facts in dispute concerning the issue of liability, and moved this court for summary judgment against both Diana and Farm House. The record substantiates Diana's and Home Indemnity's claim that the issue of liability can and should be decided via summary judgment. Thus, assuming without deciding that Davis's expert testimony would be proper, Diana's motion in limine regarding the question of whether or not Home Indemnity should be allowed to have Davis testify at trial on his opinions concerning whether or not Diana is liable as a result of the piercing of Diana's corporate veil is moot.

### A. *Diana Corporation's Liability*

#### 1. Liability Under the Insurance Policies

■ The insurance policies in question, WC–K98 54 34, BA–K98 80 59, and GL–K98 71 46, which were issued by Home Indemnity for the period 4–1–88 to 4–1–89 state that the insured party is:

Farm House Foods Corporation

(See Endorsement A)

111 E. Wisconsin Avenue, Suite 1900

Milwaukee, WI 53202

(Apr. 12, 1991 Hilgart Aff. Exh. 1). Endorsement A amends these policies to include Diana as a named insured (*Id.* Exh. 2). The "Premium" section of the conditions of the policies states in pertinent part:

At the close of each period (or part thereof terminating with the end of the policy

period) designated in the declarations as the audit period the earned premium shall be computed for such period and, upon notice thereof to the *named insured,* shall become due and payable. If the total earned premium for the policy period is less than the premium previously paid, the company shall return to the *named insured* the unearned portion paid by the named insured.

(*Id.* Exh. 4 (emphasis added)). Thus, under the terms and conditions of the insurance policies in question, Diana, as a named insured, is liable to Home Indemnity for the payment of the premiums.

### 2. Liability Under the Premium Agreement

On October 10, 1988, Home Indemnity and Farm House entered into the Premium Agreement. The Agreement states under the Premium Obligation section:

A. The premiums for the Annual Term ("Annual Policy Premium") shall be paid in accordance with the terms of this Agreement, *which modifies and supercedes [sic] the provision in the Policies regarding premium obligations.*

B. The final premium for the Policies is the sum of:

1. The Retrospective Premium; and
2. The Non–Subject Premium.

(Feb. 28, 1991 Woodley Aff. ¶ 14, Exh. 23 at 1 (emphasis added)). The Agreement also states that it applies to those insurance policies listed in Schedule A to the Agreement (*Id.* at Exh. 23 at 1). Schedule A in turn lists policies WC–K98 54 34, BA–K98 80 59, and GL–K98 71 46 (*Id.* Exh. 23). The language of the Agreement unambiguously states that its terms, not those of the insurance policies, determine who is obligated to pay the premiums for the policies.

The Agreement declares that "[a]ll payments due and owing under this Agreement shall be paid by the Insured...." (*Id.* Exh. 23 at 2). The Agreement also pronounces that Farm House is the Insured (*Id.* Exh. 23 at 1). Thus, this court concludes that under the terms of the Agreement only Farm House, not Diana, has an obligation to pay the premiums for policies WC–K98 54 34, BA–K98 80 59, and GL–K98 71 46.

Home Indemnity, however, argues that the Agreement applies only to a portion of the premiums under the policies (Apr. 12, 1991 Hilgart Aff. ¶ 8). Home Indemnity claims that the Agreement does not eliminate Diana's obligation to pay the non-retrospective, e.g. the standard portion, of the insurance policy premium. This argument is unpersuasive because there is no language in the Agreement which states that it applies only to the retrospective portion of the insurance premium. The Agreement repeatedly refers to a "Retrospective Premium," not a retrospective portion of a premium. Thus, this court concludes that the Agreement applies to the total retrospective premium due under the policies.

### 3. De Facto Merger and Continuation of Identity

■ Home Indemnity argues that Diana is liable for the premiums of the insurance policies because there was a de facto merger between Home Indemnity and Diana, and Diana is a mere continuation of Farm House. The Seventh Circuit Court of Appeals has stated that the general rule in Wisconsin is that a corporation which purchases the assets of another corporation does not automatically acquire the obligations of the selling corporation. *Leannais v. Cincinnati, Inc.,* 565 F.2d 437, 439–40 (7th Cir.1977); *Travis v. Harris Corp.,* 565 F.2d 443, 446–47 (7th Cir.1977).

The court of appeals, however, also acknowledged that there are:

four well-recognized exceptions to the general rule under which liability may be imposed on a purchasing corporation: (1) when the purchasing corporation expressly or impliedly agreed to assume the selling corporation's liability; (2) when the transaction amounts to a consolidation or merger of the purchasing and seller corporations; (3) when the purchaser corporation is merely a continuation of the seller corporation; or (4) when the transaction is entered into fraudu-

lently to escape liability for such obligations.

*Leannais,* 565 F.2d at 439. The court of appeals elaborated on the second exception to the general rule and held that:

> When the seller corporation retains its existence while parting with its assets, a "de facto merger" may be found if the consideration given by the purchaser corporation be shares of its own stock.

*Id.* (citing *Bazan v. Kux Machine Co.,* 358 F.Supp. 1250 (E.D.Wis.1973)). The rationale for the requirement that the purchaser corporation is liable under the de facto merger test only when it uses stock to make the purchase is "that liability should be imposed only where the seller's stockholders retain an interest in the manufacturing operations [the assets sold by the seller]." *Armour–Dial, Inc. v. Alkar Engineering Corp.,* 469 F.Supp. 1198, 1201 (E.D.Wis.1979) (citing Note, 27 Hastings L.J. 1307, 1318 (1976)).

The court of appeals also elaborated on the third exception and held that:

> The key element of a "continuation" is a common identity of the officers, directors and stockholders in the selling and purchasing corporations.

*Leannais,* 565 F.2d at 440. In addition, the court of appeals has stated that the test is not the continuation of the business operation, but instead the continuation of the corporate entity. *Travis,* 565 F.2d at 447.

■ The Wisconsin Supreme Court has considered the rational for the de facto merger and continuation exceptions to the general corporate liability rule and has stated:

> As Fletcher, *supra* [*Cyclopedia Corporations,* Vol. 15, sec. 7122, p. 188], points out, the rule and its exceptions were designed initially to protect contract or quasi-contract creditors of a dissolved [or insolvent] business organization and, hence, as a general group, all four exceptions are irrelevant to tort except as to the extent that the second and third exceptions are indicia of "identity." These exceptions are declaratory of tests to be applied to encourage "piercing the corporate veil" and to look to the *sub-*

> *stance and effect of business transformations or reorganizations to determine whether the original organization continues to have life or identity in a subsequent and existing business organization.*
>
> They can be viewed also as tests for "privity" with the subsequent organization even if the dealings were only between the original business organization and the ultimate consumer or the party injured.
>
> Exceptions two and three to the corporate rule *demonstrate that, when it is the same business organization that one is dealing with, whether it be by consolidation, merger, or continuation, liability may be enforced. These are tests of identity.* Suit is possible in these circumstances, because there would be privity with the actual seller or manufacturer, *i.e.,* the exceptions are guidelines to determine under what circumstances the original entity continues to exist, albeit in an altered form.

*Tift v. Forage King Industries, Inc.,* 108 Wis.2d 72, 78–79, 322 N.W.2d 14 (1982) (emphasis added). In the present case, this court finds that both the de facto merger and continuation tests indicate that there is privity between Home Indemnity and Diana, and therefore Diana is liable for the insurance premiums.

On March 3, 1988, Diana offered to exchange its stock for all of the currently issued and outstanding Farm House shares not owned by Diana (Mar. 1, 1991 Diana Brief Exh. 37 at 1). Diana offered to exchange one share of its stock for three shares of Farm House stock (*Id.*). At that time, Farm House was a holding company and its assets were the subsidiaries which it controlled (Apr. 15, 1991 Lantzy Aff. ¶ 5 Dep. Exh. 262). The Proxy Statement/Prospectus prepared in connection with Diana's exchange offer states:

**Purpose of Offer**

Diana is seeking to acquire the Farm House Shares pursuant to the Offer because Diana believes that.... In addition, because the Offer will result in the *ownership by Diana of more than 50%*

of the Farm House Shares, *Diana will obtain the power to exercise absolute control over Farm House and its operating subsidiaries,* namely RCOA, Entree and Worcester, and thus will obtain the ability to protect (and, possibly, to enhance) its present investment in these companies.

(Mar. 1, 1991 Diana Brief Exh. 37 at 4 (emphasis added)). Diana's offer was successful and it obtained absolute control over Farm House and its subsidiaries (Feb. 28, 1991 Woodley Aff. ¶ 11). Thus, Diana used its stock to purchase the assets of Farm House, and the de facto merger doctrine is applicable.

The three-to-one stock exchange provided a double benefit to Diana, as Diana simultaneously gained control over Farm House and its subsidiaries while it significantly reduced its exposure to Farm House and Farm House's creditors. This win-win result for Diana was best described in the public offer made by FH Acquisition Corporation, a subsidiary of Farm House, to purchase certain debts of Farm House from creditors:

> In April 1988, Diana purchased, pursuant to an exchange offer (the "1988 Exchange Offer") an aggregate of 6,678,-534 Farm House Shares in exchange for an aggregate of 2,226,178 authorized but unissued Diana Shares. This exchange *increased Diana's ownership in Farm House from approximately 22% to approximately 93%, and reduced Farm House's ownership in Diana from approximately 56% to approximately 36%.* Also in April 1988, Farm House sold to Diana its entire holding of Diana Stock for an $18,549,000 promissory note of Diana bearing interest at 12.5% per annum, which note was subsequently paid.

(Lantzy Aff. Exh. 240 at 17).

Diana argues that the de facto merger test cannot be applied to hold them liable because Farm House remains a separate corporate entity (May 3, 1991 Brief at 4). Although Farm House and Diana entered into an agreement in June 1988 whereby they merged, Diana President, Richard Fisher ("Fisher"), claims that this agreement never became effective (Apr. 15, 1991 Farm House Brief Exh. 241; Fisher Dep. at 23). The facts, however, indicate that Farm House is a shell corporation which is being used to insulate Diana from Farm House's creditors. This is best seen by applying the continuation test to the Diana–Farm House stock exchange. This test reveals that a de facto merger between Diana and Farm House has occurred.

First, the majority of the officers, directors, and principal stockholders of Farm House continued to be officers, directors, and principal stockholders of Diana after the exchange of stock. Prior to the exchange, Donald Runge ("Runge"), President of Farm House, and Richard Fisher ("Fisher"), President of Diana, were officers for Farm House (Mar. 1, 1991 Diana Brief Exh. 37; Lantzy Aff. Exh. 245 at 2). Runge and Fisher were officers of Diana both before and after the stock exchange (*Id.*). In addition, both Runge and Fisher were on the board of directors for Farm House prior to the exchange and on Diana's board both prior to and after the exchange (*Id.*). Finally, prior to the exchange, Runge and Fisher were the principal stockholders in Farm House as they owned 16.7 and 17.1 percent of Farm House's outstanding voting shares (*Id.* at 12). After the exchange, Runge and Fisher were the principal stockholders in Diana and together they owned approximately 33.5 percent of Diana's stock (Apr. 15, 1991 Lantzy Aff. Exh. 240 at 18).

Second, during the 1988 fiscal year, April 1987 to April 1988, Farm House had 11 employees performing corporate functions at its headquarters. Diana, on the other hand, had only four employees: a president, controller, assistant controller, and account assistant (Lantzy Aff. Exh. 124 Exh. A). The vice-president and general counsel for Farm House at this time was Michael J. McDonagh ("McDonagh") (*Id.*) After the exchange of stock and during the 1989 fiscal year, a large number of Farm House corporate office employees continued to work for the corporate offices of Diana: (1) Farm House's general counsel, McDonagh, became the general counsel for Diana; (2) Farm House's accounting clerk,

Lori Gottschalk, became the accounts payable clerk for Diana; (3) Farm House's secretary, Deborah Windis, became a secretary for Diana, and (4) Farm House's receptionist, Lori Ulrich, became the receptionist for Diana (compare Lantzy Aff. Exh. 124 to Exh. 125). Interestingly, Diana's general counsel after the exchange, McDonagh, has since returned to Farm House to become their "counsel to the corporation," and he is representing Farm House in this action (Dec. 21, 1990 Linn Aff. Exh.). In addition, on July 20, 1990, McDonagh filed with this court an affidavit in which he stated "[t]hat he is not the general counsel of Farm House and is not an employee of Farm House." (Jul. 19, 1990 McDonagh Aff. ¶ 2). This affidavit and the fact that McDonagh currently claims to be the "counsel to the corporation" for Farm House is further evidence that Diana is a mere continuation of Farm House and that the two corporations have undergone a de facto merger. Furthermore, both before and after the exchange, Farm House's and Diana's corporate headquarters were both located at 111 East Wisconsin Ave., Suite 1900, Milwaukee, Wisconsin (Fisher Dep. at 5; Lantzy Aff. Exh. 124).

Finally, the only two employees who were nominally employed by Farm House after the exchange of stock were: (1) Runge, who was president of Farm House and (2) Sandra Woodley, who remained the insurance coordinator for Farm House (Lantzy Aff. Exh. 125). However, Runge resigned as president of Farm House in November 1989, and Woodley was required to obtain the blessing of Fisher, Diana's president, before she could approve the insurance program for Farm House/Diana (Mar. 22, 1991 Fisher Dep. at 58; Apr. 15, 1991 Brief Exhs. 229, 256). In fact, when drafting memoranda or letters regarding insurance for Farm House Woodley continually referred to the insurance program as being for Farm House/Diana (*Id.* Exh. 255; Jun. 25, 1991 Lantzy letter Exhs. 132–34, 136). Thus, this court concludes that Diana is a continuation of Farm House, that a de facto merger between Diana and Farm House occurred, and grants partial summary judgment in favor of Home Indemni-

ty holding that Diana is liable to Home Indemnity for the retrospective insurance premiums Farm House promised to pay Home Indemnity for policies WC–K98 54 34, BA–K98 80 59, and GL–K98 71 46.

### B. *Farm House Foods Corporation*

Farm House has not contested Home Indemnity's claim that Farm House is liable to Home Indemnity for the unpaid portion of the retrospective insurance premiums. In fact, in Farm House's answer to Home Indemnity's complaint, it admits that it is liable to Home Indemnity for the premiums of policies WC–K98 54 34, BA–K98 80 59, and GL–K98 71 46 (Farm House Answer ¶ 6). Thus, this court grants partial summary judgment in favor of Home Indemnity and holds that Farm House is liable to Home Indemnity for the retrospective insurance premiums for policies WC–K98 54 34, BA–K98 80 59, and GL–K98 71 46.

This court, however, denies Home Indemnity's request for summary judgment in the amount of $629,935.02. Although Farm House did not file a brief in opposition to Home Indemnity's motion for summary judgment, Farm House has contested Home Indemnity's claim that it owes Home Indemnity $629,935.02 in its brief in support of its motion for the appointment of a special master. Farm House argues that (1) the computation of a retrospective insurance premium is extremely complex; (2) Home Indemnity has significantly overstated the amount which is due under the policies, and (3) a special master should be utilized to calculate the amount that Farm House owes Home Indemnity. In addition, Farm House has moved this court to strike portions of Home Indemnity's brief requesting that summary judgment be entered against Farm House because Farm House did not file a brief in opposition to Home Indemnity's summary judgment motion.

### II. Motion to Strike

Farm House's basis for its motion to strike is that Home Indemnity's cross-motion for summary judgment was not against a party named in this action. Farm

House argues that the caption which Home Indemnity used in its summary judgment motion, "Farm House Foods Corporation/Diana Corporation," does not explicitly name Farm House, but instead names a nonparty. The record in this action, however, contains numerous documents where *Farm House used the term* "Farm House/Diana," both before and after the exchange of stock, when referring to the corporate entity responsible for payment of the insurance premiums (Apr. 15, 1991 Home Indemnity Brief Exhs. 132–34, 136; Lantzy Aff. Exh. 255). Thus, Farm House's argument that there is no party by this name is meritless and its motion to strike is denied.

### III. Motion to Appoint a Special Master

Rule 53 of the Fed.R.Civ.P. provides a federal district court with the authority to appoint a special master to resolve complicated factual questions. Rule 53(b), however, states that:

A reference to a master shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated;

The Seventh Circuit Court of Appeals has considered the breadth of Rule 53 and has stated:

In this more than in any other circuit we must be alert to the danger of overusing special masters, for it was overuse by one of our district judges that led the Supreme Court to issue a writ of mandamus in *La Buy v. Howes Leather Co.,* 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957).

*Jack Walters & Sons Corp. v. Morton Bldg., Inc.,* 737 F.2d 698, 712 (7th Cir.1984), *cert. denied,* 469 U.S. 1018, 105 S.Ct. 432, 83 L.Ed.2d 359 (1984).

■ Farm House argues that the calculation of the retrospective premium which it owes to Home Indemnity is a complex matter and ill suited for determination by a jury. This court disagrees because the Agreement entered into between Farm House and Home Indemnity sets forth the exact formula to be used for calculating the final premium for the policies in question:

B. The final premium for the Policies is the sum of:
1. The Retrospective Premium; and
2. The Non–Subject Premium.

(Feb. 28, 1991 Woodley Aff. ¶ 14, Exh. 23 at 1).

The only aspect of this formula that Farm House argues is complicated is the calculation of the retrospective premium. The Agreement, however, also sets forth the exact formula for calculating the retrospective premium:

The Retrospective Premium is calculated according to the following formula.
a. (Basic Premium plus (Excess Loss Premium time LCF [Loss Conversion Factor]) plus Modified Losses) multiplied by Tax Multiplier.

(*Id.* at 3). In addition, the Agreement explicitly provides: (1) numerical values for (a) the Loss Conversion Factor (109%) and (b) the Tax Multiplier (1.069); and (2) formulas for calculating the (a) Basic Premium, (b) Excess Loss Premium, and (c) Modified Losses (*Id.* at 2–3). Thus, the determination of the retrospective premium is not complicated, but instead, merely requires a close reading of the Agreement and a precise calculation.

Farm House, however, argues that it anticipates having testimony at trial concerning the calculation of the retrospective premium which will further complicate the issue for the jury. Farm House states that it:

anticipates at least three major areas of inquiry: the Home's failure to use industry tables and the suitability of the values it chose to use; claim administration and adjustment problems causing the overstatement of incurred losses; and changes to the premium due to a decrease in business and errors in The Home's audit.

(Apr. 8, 1991 Brief at 9). These issues, however, do not increase the complexity of the formula which will be used to calculate the premium. Instead, the issues only pertain to what numerical values should be

used for the various factors included in the formula. The question of which numerical values should be used is a question of material fact ·which should be decided by the jury. Thus, this court denies Farm House's motion for the appointment of a special master.

Diana has moved this court for a continuance of the discovery deadline in this action to permit them to conduct additional discovery on the amount of premium Home Indemnity is entitled to. As noted above, there is a genuine dispute as to the material question of which numerical values should be used in the retrospective premium formula prescribed in the Agreement. Thus, this court grants Diana's motion and extends the deadline for conducting discovery on the amount of retrospective premium Home Indemnity is entitled to from Diana and Farm House to August 23, 1991.

## IV. Request to Adjourn the Trial

On July 18, 1991, corporate counsel to Farm House, McDonagh, notified this court in a letter that he had a scheduling conflict with the September 10, 1991 trial date in this action. In McDonagh's letter, he informed this court that counsel for co-defendant Diana has no objection to adjourning the trial. McDonagh, however, did not contact Home Indemnity's counsel to see if he was agreeable to an adjournment. This court construes Farm House's letter request as a motion to adjourn the trial date and denies the motion.

IT IS THEREFORE ORDERED that defendant Diana Corporation's motion for partial summary judgment is DENIED.

IT IS FURTHER ORDERED that plaintiff Home Indemnity Company's motion for summary judgment against defendants Farm House Foods Corporation and Diana Corporation is GRANTED IN PART and DENIED IN PART:

(1) summary judgment is GRANTED holding defendants Farm House Foods Corporation and Diana Corporation liable to plaintiff Home Indemnity Company for the premiums for insurance policies WC–K98 54 34, BA–K98 80 59, and GL–K98 71 46.

(2) summary judgment is DENIED on the issue of the amount of money that defendants Farm House Foods Corporation and Diana Corporation owe to Home Indemnity Company under the Premium Agreement.

IT IS FURTHER ORDERED that defendant Diana Corporation's motion in limine to exclude the testimony of plaintiff expert witness Kenneth B. Davis, Jr. is MOOT.

IT IS FURTHER ORDERED that defendant Farm House Foods Corporation's motion to have the calculation of the amount of money owed to plaintiff Home Indemnity Company under the Premium Agreement referred to a special master is DENIED.

IT IS FURTHER ORDERED that defendant Diana Corporation's motion for a continuance of the discovery deadline is GRANTED, and the deadline for conducting discovery on the issue of the amount of retrospective premium plaintiff Home Indemnity Company is entitled to from Diana and defendant Farm House Foods Corporation is extended until August 23, 1991.

IT IS FURTHER ORDERED that defendant Farm House Food Corporation's motion to adjourn the September 10, 1991 trial date is DENIED.