Carl and Dorothy OSSMAN; Wilmer and Florence Tiede; and Rosemary and Ray Ward; individually and on behalf of all others similarly situated, Plaintiffs,

v.

DIANA CORPORATION; Donald E. Runge; Richard Y. Fisher; and Farm House Foods Corporations, Defendants.

Civ. No. 4-92-976.

United States District Court, D. Minnesota, Fourth Division.

June 29, 1993.

Russell J. Jensen, and Russell J. Jensen, P.A., St. Paul, MN, Dylan J. McFarland, and Fred Burstein & Associates, Minneapolis, MN, David B. Zlotnick, Susan Schneider Thomas, and Zlotnick & Thomas, Bala Cynwyd, PA, and Donald B. Lewis, Philadelphia, PA, for plaintiffs.

Joe A. Walters, James A. Rubenstein, and O'Connor & Hannan, Minneapolis, MN, Natalie I. Koether, Robert J. Schechter, Cary Brian Samowitz, and Keck Mahin Cate & Koether, New York City, and Arthur R. Miller, Langdell West, Cambridge, MA, for defendants.

Patrick J. McLaughlin, and Dorsey & Whitney, Minneapolis, MN, for intervening plaintiff First Trust Nat. Ass'n.

David L. Mitchell, Robert T. Kugler, and Robins, Kaplan, Miller & Ciresi, Minneapolis, MN, for intervening plaintiff Norwest Bank Minnesota, National Ass'n.

Karen M. O'Brien, Washington, DC, for North American Securities Admin'rs Ass'n, Inc.

DOTY, District Judge.

This matter is before the court on the plaintiffs' motion for partial summary judgment, on the defendants' motion to dismiss, on intervenor Norwest Bank Minnesota, National Association's ("Norwest Bank") motion for summary judgment and on the North American Securities Administrators Association, Inc.'s ("NASAA") motion for leave of the court to file an amicus curiae brief. Based on a review of the file, record and proceedings herein, the court:

1. Grants the plaintiffs' motion for summary judgment on Count IV of their complaint;

2. Grants intervening plaintiff Norwest Bank's motion for summary judgment;

3. Grants NASAA's motion for leave to file a brief amicus curiae; and

4. Denies the defendants' motion to dismiss.

## BACKGROUND

In 1966, defendants Donald Runge[1] ("Runge") and Richard Fisher[2] ("Fisher") founded Farm House Foods Corporation ("Farm House").[3] Between 1977 and 1980, Farm House acquired a majority of the shares and control of Diana Corporation ("Diana").[4] By January 1985, Farm House owned approximately sixty-percent of Diana and Diana owned approximately twenty-two percent of Farm House.[5]

In January 1988, Diana issued approximately 351,000 of its shares to defendants Fisher and Runge, diluting Farm House's interest in Diana by four percent. At about the same time, Diana's board of directors approved a tender offer ("exchange offer") for the stock of Farm House. Diana offered to exchange its stock for all outstanding Farm House shares of stock that it did not already own. As a result of the exchange offer, which took effect on April 11, 1988, Diana owned 93% of Farm House's stock and Farm House only owned 37% of Diana.[6] Shortly thereafter, Farm House sold Diana its entire holding of Diana stock for an $18,549,000 promissory note bearing interest at twelve and one-half percent per annum. Diana subsequently paid off that note.

On October 10, 1988, Farm House purchased various insurance policies from The Home Indemnity Company ("Home Indemnity"). On June 8, 1990, Home Indemnity commenced an action against Diana and Farm House in the United States District Court for the Eastern District of Wisconsin ("Wisconsin court") to recover unpaid premiums. Farm House admitted that it owed certain premiums. Diana, however, denied owing any premiums.

On April 15, 1991, Home Indemnity moved for summary judgment on the issue of Diana's liability for the premiums. Home Indemnity argued that Diana is liable for the premiums because (1) it is an insured under the insurance policies; (2) a de facto merger between Diana and Farm House occurred; or (3) Diana is a mere continuation of Farm

---

1. Donald E. Runge is presently a Director of Diana and was formerly the President, Chief Executive Officer and a Director of Farm House. The plaintiffs allege that he participated in and benefitted from the transactions at issue in this case.

2. Richard Y. Fisher is presently Chairman of the Board and Co–Chief Executive Officer of Diana and was formerly Chairman of the Board and a Director of Farm House. The plaintiffs allege that he participated in and benefitted from the transactions at issue in this case.

3. In 1966, Farm House was known as Bankit Corporation.

4. At the time of the acquisition, Diana was known as Scot Lad Foods, Inc.

5. The individual defendants and their affiliates have controlled both Farm House and Diana since Farm House's acquisition of Diana.

6. Prior to the exchange offer, Diana was a subsidiary of Farm House. As a result of the transactions at issue in this case, Farm House is now a subsidiary of Diana and is insolvent.

House. The court granted Home Indemnity's motion, finding that Diana is an insured under the insurance policy and that the transactions between Diana and Farm House constitute a de facto merger of the two corporations. *Home Indem. Co. v. Farm House Foods Corp.*, 770 F.Supp. 1339, 1346 (E.D.Wis.1991).[7] Home Indemnity and Diana subsequently agreed to settle the action on the condition that the Wisconsin court vacate *Home Indemnity I.* The Wisconsin court denied the request, finding that its "decision may have potential value to numerous third parties not involved in this action, including other possible creditors who might be interested in the relationship between Farm House and Diana, and other judges who might find the decision instructive." *Home Indem. Co. v. Farm House Foods Corp.*, 770 F.Supp. 1348, 1350 (E.D.Wis.1991) (citation omitted).[8] Nevertheless, Diana chose to settle the action.

The plaintiffs in the action at bar,[9] investors who hold various securities issued by Farm House, commenced this action on February 15, 1991, alleging that they are the victims of defendants Diana, Farm House, Runge and Fisher's (together "the defendants") fraudulent conduct. The plaintiffs contend that the defendants fraudulently stripped Farm House of its assets, rendering it insolvent and leaving them with worthless investments. The plaintiffs thus assert the following claims: [10]

1. The defendants' fraudulent acts constitute a violation of Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), ("Count I");

2. The defendants' fraudulent acts constitute a violation of Sections 14(e) and 20 of the Securities Exchange Act, 15 U.S.C. §§ 78n(e) and 78t, ("Count II");

3. Defendants Diana, Fisher and Runge's fraudulent acts constitute a violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*, ("Count III");

4. Defendants Diana and Farm House are liable to the plaintiffs pursuant to doctrine embodied in the common law of contract and promissory estoppel ("Count IV");

5. Defendants Diana, Fisher and Runge are liable to the plaintiffs pursuant to the doctrine embodied in the common law of tortious interference with contract ("Count V"); and

6. The defendants' fraudulent acts constitute a violation of the Uniform Fraudulent Transfer Act ("Count VI").

The plaintiffs now move for summary judgment on Count IV of their amended complaint. The plaintiffs, arguing that the Wisconsin court has already decided the factual and legal issues underlying Count IV, contend that they are entitled to summary judgment on that count based on the doctrine

7. The court shall refer to the Wisconsin court's order set forth at 770 F.Supp. 1339 as *Home Indemnity I*.

8. The court shall refer to the Wisconsin court's order set forth at 770 F.Supp. 1348 as *Home Indemnity II.*

9. Plaintiffs Carl and Dorothy Ossman are Wisconsin residents. Carl Ossman holds $2,600 principal amount of Farm House 11% Senior Subordinated Debentures through his IRA account. Dorothy Ossman holds $4,200 principal amount of Farm House 11.50% Subordinated Capital Notes in her own name and an additional $2,700 worth of that security through her IRA account. Plaintiffs Wilmer and Florence Tiede are Minnesota residents. The Tiedes jointly hold $6,000 principal amount of the Farm House 11% Senior Subordinated Debentures. In addition, Wilmer Tiede holds $2,400 principal amount of the Farm House Floating Rate Notes through his IRA account. Rosemary and Ray Ward are Minnesota residents. The Wards hold $10,000 principal amount of the Farm House 11% Senior Subordinated Debentures.

The plaintiffs also represent a class consisting of all persons or entities who held Farm House 11.50% Subordinated Capital Notes, Floating Rate Subordinated Capital Note, or 11% Senior Subordinated Debentures (collectively the "debt" or the "bonds") as of November 19, 1991, and who excluded themselves from the settlement class certified by the court on that date, or their successors in interest ("the class").

The class is composed of two subclasses. The noteholder subclass consists of holders of the capital notes and floating rate notes. The debentureholder subclass consists of holders of the debentures.

10. The plaintiffs originally filed their complaint on February 15, 1991. The plaintiffs filed an amended complaint on September 28, 1992, adding Farm House as a defendant.

of collateral estoppel. Intervening plaintiffs First Trust National Association [11] ("First Trust") and Norwest Bank Minnesota, National Association [12] ("Norwest") contend that the application of collateral estoppel is appropriate in this case. NASAA also contends that application of the doctrine of collateral estoppel is appropriate and warrants an order granting summary judgment on Count IV.[13]

The defendants contend that collateral estoppel is·not applicable in this case because the Wisconsin court's order is an interlocutory order and, moreover, is based on an erroneous application of law. The defendants thus, contend that the court should deny the plaintiffs' motion for summary judgment on Count IV. In addition, the defendants move to dismiss the plaintiffs' action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. The defendants also contend that certain of the plaintiffs' claims are subject to dismissal under Rules 9(b) and 8(a) of the Federal Rules of Civil Procedure. The plaintiffs, arguing that they present claims that are legally viable, contend that no dismissal is warranted.[14] The court will consider the parties' motions in turn.

## DISCUSSION

### I. The Plaintiffs' Motion for Summary Judgment on Count IV

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and 'that the moving party is entitled to a judgment as a matter of law." This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that

11. The court granted First Trust leave to intervene as an additional plaintiff in this action on January 28, 1993. First Trust acts as an indenture trustee for the holders of certain capital notes issued by Farm House pursuant to the terms of various note indentures. Under the terms of those note indentures, Farm House is obligated to make payments of principal and interest to the holders of the notes, to pay First Trust reasonable compensation for services rendered under the indenture and to reimburse First Trust for the expenses it incurred in connection with the indenture. Therefore, First Trust is a creditor of Farm House, both on behalf of those note holders to whom Farm House remains indebted and on its own behalf for unpaid fees and expenses.

12. Norwest is the duly appointed, qualified and acting trustee under an indenture dated January 1, 1987, between Farm House and Norwest. In May 1990, Norwest commenced a separate action against Farm House on behalf of certain debentureholders seeking payment as provided for in the indenture. In March 1992, Norwest moved for summary judgment in the collection action. The court granted that motion in an order dated August 17, 1992. See Norwest Bank Minnesota, Ntl. Assoc. v. Farm House Foods Corp., Civ. No. 4–90–352 (D.Minn. Aug. 17, 1992) (Murphy, J.). On October 26, 1992, the court ordered the entry of judgment against Farm House in favor of Norwest in the amount of $2,229,619.36. See Norwest Bank Minnesota, Ntl. Assoc. v. Farm House Foods Corp., Civ. No. 4–90–352 (D.Minn. Oct. 26, 1992) (Murphy, J.).

On January 28, 1993, the court granted Norwest leave to intervene in the action at bar. Norwest now moves for summary judgment on the issue of Diana's liability for Farm House's debts. Norwest adopts the plaintiffs' collateral estoppel argument in its memorandum in support of its motion. Norwest also replied to the defendants' memorandum in opposition to the plaintiffs' motion for summary judgment on Count IV.

In the interest of judicial economy, the court will not separately address Norwest's motion for summary judgment. The court has reviewed its arguments and will incorporate those arguments into its analysis of the plaintiffs' summary judgment motion. However, the court's ruling on the plaintiffs' motion will also apply to Norwest's motion.

13. NASAA serves as a forum in which its members, the securities regulators of each of the fifty states comprising the United States, the District of Columbia, Puerto Rico, the Canadian provinces and territories and the Republic of Mexico work together to protect investors at the grassroots level and to promote fair and open capital markets. NASAA moved the court for leave to file a brief amicus curiae. In the interest of compiling a comprehensive record on which the difficult issues before it, the court grants NASAA's motion and considers its memorandum.

14. Intervening plaintiffs First Trust and Norwest also filed memoranda in opposition to the defendants' motion to dismiss. The court will consider those memoranda in its consideration of the defendants' motion.

the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Stated in the negative, summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). A fact is material only when its resolution affects the outcome of the case. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552. With this standard at hand, the court will consider the plaintiffs' motion for summary judgment on Count IV.

■ The issue before the court is whether the Wisconsin court's ruling that the transactions between Diana and Farm House constitute a de facto merger should be given collateral estoppel effect and preclude the defendants from relitigating that issue. The plaintiffs, the party asserting collateral estoppel,

have the burden of proving that collateral estoppel is applicable. *In re Miera,* 926 F.2d 741, 743 (8th Cir.1991).

The parties dispute which body of case law the court should apply to resolve the issue before it. The defendants contend that the court, sitting in diversity, should apply Minnesota's choice-of-law analysis to determine which law to apply. The defendants, without providing any analysis of their own, assert that if the court were to undertake such an analysis, the court would determine that Wisconsin law applies.[15] The plaintiffs apparently argue, although their argument is somewhat unclear, that the court should apply federal law to resolve the collateral estoppel dispute. Intervenor Norwest Bank argues that the court should apply Minnesota law to resolve the collateral estoppel dispute.

Upon review of the parties' arguments and the case law, the court determines that the choice of one body of law over the others is not outcome determinative. In making this determination, the court notes that the collateral estoppel test employed by the Eighth Circuit Court of Appeals ("Eighth Circuit"), the Minnesota courts and the Wisconsin courts differ slightly. The Eighth Circuit employs the following factors to determine if collateral estoppel is applicable in a particular case:

(1) the issue sought to be precluded must be the same as that involved in the prior action;

(2) the issue must have been litigated in the prior action;

(3) the issue must have been determined by a valid and final judgment; and

(4) the determination must have been essential to the prior judgment.

*Miera,* 926 F.2d at 743. Minnesota courts also employ a four factor test to determine

**15.** The defendants also contend that the choice of Wisconsin's law over Minnesota's law is not outcome determinative because neither Wisconsin nor Minnesota recognize non-mutual offensive collateral estoppel. The defendants thus contend that collateral estoppel is not applicable in this case. The court, however, rejects that argument because both Minnesota and Wisconsin recognize non-mutual offensive collateral estoppel under certain circumstances. *See e.g., Michelle T.*

*v. Crozier,* 173 Wis.2d 681, 495 N.W.2d 327, 333 (1993); *Green v. City of Coon Rapids,* 485 N.W.2d 712, 718 (Minn.Ct.App.1992); *Johnson v. Consolidated Freightways, Inc.,* 420 N.W.2d 608, 613 (Minn.1988); *Engelstad v. Cargill, Inc.,* 336 N.W.2d 284, 285 (Minn.1983); *Lustik v. Rankila,* 269 Minn. 515, 131 N.W.2d 741, 746 (1964); *McCourt v. Algiers,* 4 Wis.2d 607, 91 N.W.2d 194, 195–97 (1956).

the applicability of collateral estoppel in a particular case:

> We have applied collateral estoppel where: "(1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue."

*Kaiser v. Northern States Power Co.,* 353 N.W.2d 899, 902 (Minn.1984) (citations omitted). Wisconsin courts weigh the following factors to determine if application of collateral estoppel in a particular case would be fair:

> In determining whether to invoke collateral estoppel, the court may consider some or all of the following factors: (1) could the party against whom preclusion is sought, as a matter of law, have obtained review of the judgment; (2) is the question one of law that involves two distinct claims or intervening contextual shifts in the law; (3) do significant differences in the quality or extensiveness of the proceedings between the two courts warrant relitigation of the issue; (4) have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; or (5) are matters of public policy and individual circumstances involved that would render the application of the doctrine to be fundamentally unfair?

*Moore v. Labor and Indus. Review Comm'n,* 175 Wis.2d 561, 499 N.W.2d 288, 290 (1993) (citation omitted). The court's analysis, however, accounts for all of the concerns expressed in each of those standards. Accordingly, the court determines that there is no need to resolve the dispute concerning which law to apply and cites cases from Minnesota, Wisconsin and federal courts in its analysis.

The defendants do not dispute that the de facto merger issue in this case is identical to the de facto merger issue considered in *Home Indemnity I,* that they were a party to *Home Indemnity I* or that they had a full and fair opportunity to litigate the de facto merger issue before the Wisconsin court. Therefore, the court limits its inquiry to whether *Home Indemnity I* constitutes a final adjudication on the merits for purposes of collateral estoppel, whether the de facto merger issue was essential to that ruling and whether policy precludes the application of collateral estoppel in this case.

### A. Interlocutory Opinion

■ The defendants argue that *Home Indemnity I* does not constitute a final adjudication on the merits because the Wisconsin court did not address the issue of damages. In *John Morrell & Co. v. Local Union 304A,* 913 F.2d 544 (8th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 1683, 114 L.Ed.2d 78 (1991), however, the Eighth Circuit addressed an argument similar to the one the defendants assert. In that case, the defendant union argued that the jury's verdict regarding liability could not have preclusive effect because the "liability verdict was not immediately appealable since the damages phase of the trial had not concluded." *Id.* at 563. The Eighth Circuit rejected the defendant union's argument.[16]

> While this circuit has not squarely confronted this issue, we believe that finality for purpose of appeal ... is not necessarily the finality that is required for issue preclusion purposes.... "[W]e see no reason why in an appropriate case a ruling that is final on the issue of liability should not preclude the party against whom the decision ran from presenting further evidence on the issue there finally determined."

*Id.* (footnote and citations omitted); *see also In re Brown,* 951 F.2d 564, 569 (3d Cir.1991)

---

16. In making its determination, the Eighth Circuit distinguished a prior ruling in which it determined that a dismissal under Rule 54(b) of the Federal Rules of Civil Procedure, without express direction from the dismissing court that there is no just reason for delaying entry of judgment, should be given no preclusive effect. *Morrell,* 913 F.2d at 563 n. 17 (discussing *United States v.*

*Arkansas,* 791 F.2d 1573 (8th Cir.1986)). The Eighth Circuit declined to rely on *Arkansas* in deciding *Morrell* because "dismissals [under Rule 54(b)] are 'subject to revision at any time before the entry of judgment' and therefore are inherently tentative" and lack any indicia of finality. *Id.*

("[T]he effectiveness of issue preclusion, sometimes called collateral estoppel, does not require the entry of a judgment, final in the sense of being appealable."); *Dyndul v. Dyndul,* 620 F.2d 409, 412 n. 8 (3d Cir.1980) (" 'Finality' for purposes of issue preclusion is a more 'pliant' concept than it would be in other contexts.") (footnote omitted); *Lummus Co. v. Commonwealth Oil Refining Co.,* 297 F.2d 80, 89 (2d Cir.1961) ("Whether a judgment, not 'final' in the sense of 28 U.S.C. § 1291, ought nevertheless be considered 'final' in the sense of precluding further litigation of the same issue, turns upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review. 'Finality' in the context here relevant may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again."), *cert. denied,* 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962); 1 *Restatement (Second) of Judgments* § 13 and comment (g) (1982) ("[F]or purposes of issue preclusion ...; 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.... [P]reclusion should be refused if the decision was avowedly tentative. On the other hand, that the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal or was in fact reviewed on appeal, are factors supporting the conclusion that the decision is final for the purpose of preclusion.").

The defendants proffer three reasons why the rule set forth in *Morrell* does not apply in this case. First, the defendants argue that there is no final adjudication of the de facto merger issue in the Wisconsin proceeding because *Home Indemnity I* was subject to revision under Rule 54(b) when the parties settled that action. However, review of the Wisconsin proceedings reveals that the Wisconsin court considered its ruling on the de facto merger issue to be final and not open to reconsideration when the parties decided to settle the action. The fact that *Home Indemnity I* did not contain the technical Rule 54(b) language concerning entry of judgment

does not warrant a different conclusion. Moreover, the Wisconsin court's order was ripe for appeal on the issue of liability. The defendants' tactical decision to settle the case rather than seeking the entry of judgment and an appeal does not warrant the preclusion of collateral estoppel. The court thus reject the defendants' first argument concerning the applicability of *Morrell* to this case.

The defendants alternatively argue that there is no final adjudication of the de facto merger issue in the Wisconsin proceeding because the Wisconsin court did not support its ruling on the de facto merger issue with a reasoned opinion. Examination of *Home Indemnity I,* however, reveals that the Wisconsin court issued a reasoned opinion. Even if the Wisconsin court reached the wrong legal conclusion, that fact, without more, does not warrant the preclusion of collateral estoppel. Generally, the court does not consider the propriety of another court's ruling in determining whether it should give preclusive effect to the prior court's order. *See e.g., Bates v. Union Oil Co. of California,* 944 F.2d 647, 650 (9th Cir.1991) ("[E]ven though a case may have been 'decided incorrectly, this is an insufficient basis to defeat the application of collateral estoppel.' ... Assuming ... [that the prior order] *is not free from legal error, the way to correct that error was by appeal....*") (citations omitted), *cert. denied,* —— U.S. ——, 112 S.Ct. 1761, 118 L.Ed.2d 424 (1992); *Disabled Am. Veterans v. Commissioner of Internal Revenue,* 942 F.2d 309, 316 (6th Cir.1991) ("It requires more than mere belief that a case was wrongly decided to avoid the application of the collateral estoppel doctrine.... [The defeated party cannot avoid the application of collateral estoppel] 'merely because the defeated party wishes to reargue the law.' ") (quoting 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4425 (1981)). The court thus rejects the defendants' second argument concerning the applicability of *Morrell* to this case.

Finally, the defendants argue that there is no final adjudication of the de facto merger issue because the Wisconsin court based its liability ruling on more than one legal theory.

The defendants reason that had they appealed *Home Indemnity I*, the appellate court might not have considered the de facto merger issue as there were other bases upon which *Home Indemnity I* could have been affirmed. The defendants thus assert that the de facto merger issue is not essential to the Wisconsin court's ruling. The defendants cite *Gray v. Lacke*, 885 F.2d 399 (7th Cir.1989), *cert. denied*, 494 U.S. 1029, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990), in support of their argument.

In *Gray*, the plaintiff had filed a prior action against the county for which she worked under 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2 *et seq.*, for "sexual harassment, wage discrimination, and retaliation:..." *Id.* at 404. The district court dismissed the plaintiff's action for failure to state a claim "[b]ecause ... [she] failed to show that the alleged discrimination and retaliation she suffered was due to a policy or custom of ... [the county]." *Id.* "The district court also ruled that ... the plaintiff had failed to show a deprivation of her equal protection or first amendment rights." *Id.* The plaintiff appealed and the appellate "court affirmed the district court solely on the basis that her complaint failed to show that the alleged discriminatory actions were done pursuant to a policy or custom of ... [the] [c]ounty." *Id.* (citation omitted) The appellate court "expressly refused to decide whether ... [the plaintiff] had adequately alleged deprivation of her rights guaranteed by the first and fourteenth amendments." *Id.* (citation omitted).

Thereafter, the plaintiff filed another action against her supervisors in their official and individual capacities, alleging that they had "deprived her of her rights guaranteed by the first and fourteenth amendments to the Constitution in violation of 42 U.S.C. § 1983." *Id.* The district court dismissed the action. On appeal, the appellees argued that collateral estoppel prevented the plaintiff from maintaining her action. The Seventh Circuit Court of Appeals rejected the appellees' argument. The Seventh Circuit found that:

In her prior action against ... [the] [c]ounty, ... [the plaintiff] tried to appeal the district court's ruling that the actions of which she complained did not violate her first or fourteenth amendment rights. Our court, however, affirmed the district court on other grounds and expressly declined to reach those issues.... Therefore, for reasons beyond her control, ... [the plaintiff] was not afforded a full and fair opportunity to litigate those issues. Accordingly, collateral estoppel does not apply to first and fourteenth amendment issues in the present action.

*Id.* at 404 (citation omitted).

The facts and procedural history underlying the case at bar are distinguishable from the facts and procedural history underlying *Gray*. In the case at bar, the defendants made a tactical choice to settle *Home Indemnity I* rather than seeking an appeal. The defendants were afforded a full and fair opportunity to appeal the ruling on the facto merger issue, but, for reasons within their control, chose not to do so. Moreover, the defendants chose to settle after the Wisconsin court ruled that no vacation of *Home Indemnity I* was warranted because it might have preclusive effect in other proceedings. Based on the foregoing, the court finds no support for the defendants' third argument concerning the applicability of *Morrell* in this case. Accordingly, the court concludes that even though the Wisconsin court did not consider damages in *Home Indemnity I*, that fact does not warrant the conclusion that *Home Indemnity I* is not final for purposes of collateral estoppel.

**B. Settlement**

■ The defendants argue that the settlement and voluntary dismissal of *Home Indemnity I* preclude the application of collateral estoppel. In support of their argument, the defendants cite *In re Piper Aircraft Distr. Sys. Antitrust Litig.*, 551 F.2d 213, 219 (8th Cir.1977) and *Wisconsin Hosp. Ass'n v. Reivitz*, 630 F.Supp. 1015 (E.D.Wis.1986), *aff'd in part and vacated in part*, 820 F.2d 863 (7th Cir.1987). In *Piper*, the plaintiff sought certification of a class action. The district court denied the motion based on the

dismissal of a prior action in which the plaintiff sought to certify the same class. *Piper*, 551 F.2d at 218. The Eighth Circuit reversed the district court's use of collateral estoppel based on the unusual circumstances that occurred prior to the plaintiff's voluntary dismissal of the prior action. *Id.* at 219–20. The Eighth Circuit determined that "[t]he crucial fact [in *Piper*] is that ... [the plaintiff] dismissed the ... [prior] action without prejudice, pursuant to Fed.R.Civ.P. 41(a)(1)(i)." *Id.* at 220 n. 11. The circuit court reasoned that the defendant did not answer the plaintiff's complaint or respond to the plaintiff's motion prior to dismissal and, therefore, the district court had no opportunity to consider the merits of the issue. *Id.* It thus determined there was no final adjudication for purposes of collateral estoppel. *Id.*

In *Wisconsin Hospital*, the court declined to give preclusive effect to a prior ruling involving the same parties and issue because the parties settled the action before the entire case was decided on the merits and the settlement precluded challenge to its ruling on appeal or pursuant to a motion for reconsideration. *Wisconsin Hospital*, 630 F.Supp. at 1019. The court thus determined that the

party opposing the use of estoppel did not have a full and fair opportunity to litigate the issue. *Id.*

The court determines that the case at bar is distinguishable from *Piper* and *Wisconsin Hospital*. In *Home Indemnity I*, the parties completed discovery on the de facto merger issue, briefed that issue, argued that issue in a summary judgment proceeding and the Wisconsin court ruled on that issue. Rather than seeking appeal or waiting for the court to address their motion for reconsideration, the defendants chose to settle the Wisconsin proceeding.[17] Thus, unlike the parties in *Piper* and *Wisconsin Hospital*, the defendants had a full and fair opportunity to litigate the issue on which preclusion is sought. Moreover, Home Indemnity dismissed its action after settlement pursuant to Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure,[18] not Rule 41(a)(1)(i) of the Federal Rules of Civil Procedure [19] as in *Piper*,[20] and the court finds no reason to expand the narrow ruling in *Piper* to this case. Accordingly, the court concludes that the parties' settlement and dismissal of the Wisconsin proceedings do not preclude application of collateral estoppel in this case.[21]

---

**17.** The defendants settled for approximately 91% of the damages Home Indemnity sought. Plaintiffs sought damages of $630,000; Diana elected to settle the matter for $575,000.

**18.** Rule 41(a)(1)(ii) provides, in part, that:
[A]n action may be dismissed by the plaintiff without order of court ... (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action.
Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure.

**19.** Rule 41(a)(1)(i) provides, in part, that:
[A]n action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs....
Rule 41(a)(1)(i) of the Federal Rules of Civil Procedure.

**20.** The defendants also cite *Safeguard Business Sys., Inc. v. Hoeffel*, 907 F.2d 861 (8th Cir.1990) in support of their argument. A careful reading of that decision, however, reveals that the Eighth Circuit limited its discussion to voluntary dismissals under Rule 41(a)(1)(i). Therefore, *Safeguard* is distinguishable from the case at bar. Similarly, the court finds that the cases from

other federal circuits upon which the defendants rely for support of their argument concerning the effect of settlement on the availability of collateral estoppel are factually distinguishable from the case at bar.

**21.** The court notes that its determination is bolstered by the rulings of several other courts finding that settlement of an action does preclude the application of collateral estoppel. *See e.g.*, *Wong v. Smith*, 961 F.2d 1018, 1020 (1st Cir.1992) (analyzing several states' laws in finding that under Massachusetts law, voluntary dismissal of an action that has been fully litigated does not negate preclusive effect of ruling); *Bates*, 944 F.2d at 650 (finding that in some circumstances, a prior judgment does not lose preclusive effect because the parties settled the action before appeal); *Hartley v. Mentor Corp.*, 869 F.2d 1469, 1472 (Fed.Cir.1989) (the "voluntary relinquishment [by settlement] of one's right to appeal, where one stands as overall loser," is an exception to the general rule that issues which could not have been appealed are normally not subject to preclusion); *Wellons, Inc. v. T.E. Ibberson Co.*, 869 F.2d 1166, 1169 (8th Cir.1989) ("Collateral estoppel applies when the issues have been fully adjudicated regardless of a subsequent settlement agreement.") (citations omitted); *Cheme-*

## C. Policy

■ The defendants contend that even if the plaintiffs satisfy the requirements for application of collateral estoppel, application of that doctrine in this case would be unjust. *See e.g., Bates,* 944 F.2d at 651 ("A district court should not apply offensive collateral estoppel if to do so would be unfair to the defendant.") (citing *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)). The defendants proffer several arguments in support of their contention.[22]

Upon examination of the record and proceedings herein, the court determines that granting *Home Indemnity I* preclusive effect is fair, constitutes no abuse of discretion and accomplishes at least two of the goals underlying collateral estoppel. Examination of *Home Indemnity I* reveals that it is not patently wrong. In addition, the Wisconsin court refused to vacate *Home Indemnity I* and put the defendants on notice that its rulings might be given preclusive effect in subsequent proceedings. Moreover, that notice provided the defendants with reasonable incentive to appeal *Home Indemnity I,* especially in light of the fact that the plaintiffs had filed their complaint in this action asserting the same de facto merger issue at issue in *Home Indemnity I.* The defendants knew they were taking a calculated risk with respect to defending this action in choosing to settle *Home Indemnity I* over appeal. The court thus concludes that application of col-

lateral estoppel in this case is fair and effectuates one of the goals underlying collateral estoppel, preventing parties from the defendants from having more than one opportunity to litigate the same issue.

The court also finds that application of collateral estoppel advances another goal underlying that doctrine, judicial economy. Application of collateral estoppel will resolve Norwest's action against Diana and streamline the plaintiffs and First Trust's claims against Diana. Moreover, application of collateral estoppel may facilitate settlement of the remaining issues.

In all, the court finds no unfairness in forcing the defendants to abide by consequences they knew might arise out of their prior tactical decisions. The court thus concludes that application of offensive collateral estoppel is appropriate in this case and, based on the foregoing, grants both the plaintiffs' motion for summary judgment on Count IV of their amended complaint and Norwest's motion for summary judgment.

## II. The Defendants' Motion to Dismiss[23]

■ On a motion to dismiss, the court must construe the amended complaint in the light most favorable to the plaintiffs, *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Fusco v. Xerox Corp.,* 676 F.2d 332, 334 (8th Cir.1982), and the allegations in their complaint must be

tron Corp. v. Business Funds, Inc., 682 F.2d 1149, 1191 and n. 87 (5th Cir.1982) (finding a plaintiff, not party to the prior suit, can invoke offensive collateral estoppel against defendant when prior case has been fully litigated but settled before entry of final judgment), *vacated and remanded on other grounds,* 460 U.S. 1007, 103 S.Ct. 1245, 75 L.Ed.2d 476 (1983), *initial opinion adhered to on remand,* 718 F.2d 725 (5th Cir.), *cert. denied,* 460 U.S. 1013, 103 S.Ct. 1254, 75 L.Ed.2d 483 (1983); *Aetna Cas. & Sur. Co. v. Jeppesen & Co.,* 440 F.Supp. 394, 401–05 (D.Nev. 1977), *vacated and remanded on other grounds,* 642 F.2d 339 (9th Cir.1981) (finding that a plaintiff not a party to a prior case can invoke offensive collateral estoppel against the defendant when the prior case had been fully litigated as to liability but settled before trial on the issue of damages and entry of judgment).

**22.** The defendants argue that application of collateral estoppel would be unfair in this case because:

1. *Home Indemnity I* was wrong;
2. *Home Indemnity I* involved a legal holding of general interest that has not been tested by appellate review;
3. Diana did not have a reasonable incentive to seek reversal of *Home Indemnity I;*
4. Application of collateral estoppel would penalize Diana for furthering policy favoring settlement;
5. Diana had no reason to know when it settled that *Home Indemnity I* would have preclusive effect; and
6. The efficiencies that collateral estoppel is designed to promote would not exist under the circumstances of this case.

**23.** The court's analysis concerning the motion to dismiss is equally applicable to the intervening plaintiffs' complaints. However, in the interest of simplicity, the court only discusses the motion to dismiss in relations to the plaintiffs' amended complaint.

accepted as true. *Hughes v. Rowe,* 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (per curiam); *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972) (per curiam); *Sixel v. Transp. Communications,* 708 F.Supp. 240, 242 (D.Minn. 1989). In addition, the court must resolve any ambiguities concerning the sufficiency of the plaintiffs' claims in favor of the plaintiffs, see e.g., *Hughes,* 449 U.S. at 10, 101 S.Ct. at 176; *Cruz,* 405 U.S. at 322, 92 S.Ct. at 1081, and give the plaintiffs "the benefit of every reasonable inference" drawn from the "well-pleaded" facts and allegations in their complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn,* 373 U.S. 746, 753 n. 6, 83 S.Ct. 1461, 1465 n. 6, 10 L.Ed.2d 678 (1963). Thus, the court may not dismiss the plaintiffs' claims "merely because the court doubts that ... [the] plaintiff[s] will be able to prove all of the necessary factual allegations." *Fusco,* 676 F.2d at 334. Rather, the "court may dismiss ... [the plaintiffs'] complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984), (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). With this standard at hand, the court will consider the defendants' motion to dismiss the plaintiffs' claims.

Accepting the factual allegations of the amended complaint as true, the court cannot conclude at this time that the plaintiffs can prove no set of facts that would entitle them to relief. Accordingly, the court denies the defendants' motion to dismiss the plaintiffs' amended complaint under Rule 12(b)(6). In addition, the court notes that the defendants provided no specific discussion concerning their motion to dismiss pursuant to Rules 9(b) and 8(a) in this matter. Therefore, because it lacks information on which to make any other determination, the court denies the defendants' motion to dismiss pursuant to Rules 9(b) and 8(a).

Based on the foregoing, IT IS HEREBY ORDERED that:

1. The North American Securities Administrators Association's motion for leave to file a brief amicus curiae is granted;

2. The plaintiffs' motion for summary judgment on Count IV of their amended complaint is granted;

3. Intervening plaintiff Norwest Bank's motion for summary judgment is granted; and

4. The defendants' motion to dismiss is denied.