**Avrom GART, Individually and On Behalf of All Others Similarly Situated, Plaintiff,**

**v.**

**ELECTROSCOPE, INC., Robert C. Odell, David W. Newton, Vern D. Kornelsen, Robert D. Tucker, Joe W. Tippett, Donald R. Temple, C. Randle Voyles, and John G. Kinnard and Company, Inc., Defendants.**

**Civil No. 97–1343 (ADM/AJB).**

United States District Court, D. Minnesota.

March 24, 1998.

Randall H. Steinmeyer, Reinhardt & Anderson, St. Paul, MN, Leo W Desmond, Stephen Rabin, Marvin L. Frank, (argued), Rabin & Peckel, New York City, for Avrom Gart.

Mark Murray Nolan, Stapleton Nolan & McCall, St. Paul, MN, Alan M. Loeb, (argued), Lisa S. Kahn, Carole K. Jeffery, Davis Graham & Stubbs, Denver, CO, for Electro-

scope, Inc., Robert C. Odell, David W. Newton, Vern D. Kornelsen, Robert D. Tucker, Joe W. Tippett, Donald R. Temple, C. Randle Voyles.

Gregory John Schaefer, Frank A. Taylor, (argued), Hinshaw & Culbertson, Mpls, MN, for John G. Kinnard & Company, Inc.

## MEMORANDUM OPINION AND ORDER

MONTGOMERY, District Judge.

## I. INTRODUCTION

The above-entitled matter came on for hearing before the undersigned United States District Judge on December 19, 1997, pursuant to Defendants' motions to dismiss. This class action arises out of an investor's dissatisfaction with representations made in a prospectus and registration statement issued by a surgical device manufacturer in conjunction with its initial public offering of shares of common stock. In the complaint, Plaintiff asserts three bases for relief. Count I alleges violations by all Defendants of Section 11 of the Securities Act of 1933 ("the 1933 Act"), codified at 15 U.S.C. § 77k(a) (misrepresentation or omission of a material fact in a registration statement) ("Section 11"). Count II alleges violations by Defendant John G. Kinnard and Company, Inc. of Section 12(a)(2) of the 1933 Act, codified at 15 U.S.C. § 77l(a)(2) (misrepresentation or omission of a material fact in a prospectus or communication) ("Section 12(a)(2)"). Finally, Count III alleges violations by Defendant Robert C. Odell, of Section 15 of the 1933 Act, codified at 15 U.S.C. § 77o (liability for controlling persons) ("Section 15"). Defendants move to dismiss the complaint in its entirety for failure to state claims upon which relief can be granted. For the reasons set forth below, Defendants' motions will be granted.

## II. BACKGROUND[1]

Defendant Electroscope, Inc. ("Electroscope" or the "Company") is a company engaged in the development, manufacturing and marketing of proprietary electrosurgical products designed to provide greater safety to patients who undergo minimally invasive surgery. Prospectus, p. 14. The Company was organized in 1991, and for the first few years of its existence was principally engaged in the research and development of new products. Id. at 7–8. In fiscal year 1994, the Company commenced manufacturing and began marketing its products. Id.

On June 25, 1996, Electroscope made an initial public offering ("IPO") of 1,200,000 shares of its common stock at $10.50 per share pursuant to a registration statement ("Registration Statement") and prospectus ("Prospectus"). Complaint, ¶ 1. Electroscope's lead underwriter for the IPO was Defendant John G. Kinnard and Company, Inc. ("Kinnard"). The Prospectus warned investors that "[t]he Common Stock offered ... is speculative and involves a high degree of risk and immediate substantial dilution." Prosp. at 1. Additionally, the Prospectus contained a "Summary Financial Data" section revealing that the Company had sustained losses in each of the three fiscal years leading up to the IPO, as well as six pages of "Risk Factors" wherein investors were specifically warned that Electroscope had never made a profit and had lost millions of dollars since its formation. Id. at 4, 5–10.

Notwithstanding such disclosures and cautionary warnings, Plaintiff Avrom Gart ("Gart") purchased 1,000 shares of Electroscope common stock at $10.50 per share on June 25, 1996. Thirteen days later, Gart sold the shares for $9.75 per share. On June 4, 1997, Gart filed the instant class action against Electroscope; seven of Electroscope's officers and directors; and Electroscope's lead underwriter, Kinnard. Plaintiff's claims rest primarily on his allegation that "[t]he Registration Statement of which the Prospectus was a part ... was materially false and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements therein not misleading, and failed to disclose adequately material facts ..." Compl. at ¶ 51.

---

1. The following is a brief recitation of the facts giving rise to this litigation. Further facts and allegations will be described throughout the discussion below.

## III. DISCUSSION

### A. Standard of Review

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss claims for failure to state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b)(6). In considering a motion to dismiss, the pleadings are construed in a light most favorable to the plaintiff, and the facts alleged in the complaint must be taken as true. *Hamm v. Groose*, 15 F.3d 110, 112 (8th Cir.1994); *Ossman v. Diana Corp.*, 825 F.Supp. 870, 879–80 (D.Minn.1993). Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the plaintiff. *Ossman*, 825 F.Supp. at 880.

A complaint should be dismissed only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations. *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995) (citations omitted); *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir.1996). As a practical matter, such a motion should be granted "only in the unusual case in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Frey*, 44 F.3d at 671. Although the standard is a stringent one, the Eighth Circuit recently held that a securities complaint alleging only immaterial misrepresentations presents an insuperable bar to relief, and dismissal of such a complaint is proper. *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir.1997).

### B. Counts I and II

In his first two counts, Plaintiff alleges that Defendants fostered a misleading impression that Electroscope was rapidly growing by making four material misrepresentations in the Prospectus: 1) Defendants only provided the Company's annual financial results, rather than quarterly financial results which would have revealed a downward trend in Electroscope's recurring quarterly revenue; 2) Defendants failed to disclose a "one-time, never to be repeated 'initial stock in order'" made by the Company's sole distributor, Valleylab, Inc. ("Valleylab"), in the third quarter of fiscal year 1996; 3) Defendants failed to disclose Electroscope's poor financial results for the first quarter of fiscal year 1997; and 4) Defendants failed to disclose the Company's imminent transition to a new generation of products.

█ Section 11 imposes civil liability on persons preparing and signing materially misleading registration statements. 15 U.S.C. § 77k(a). Similarly, Section 12(a)(2) creates a private remedy for the buyer of a security against the seller for material misrepresentations in connection with the offer and the sale. 15 U.S.C. § 77l(a)(2). To establish a prima facie claim under either Section 11 or Section 12(a)(2), a plaintiff must show that he bought the security and that there was a material misstatement or omission. *In re NationsMart Corp. Securities Litig.*, 130 F.3d 309, 314–19 (8th Cir.1997). "A misrepresentation or omission is material if there is 'a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available.'" *Gateway 2000*, 122 F.3d at 546. In many circumstances, the question of materiality is one for the jury to decide; however, "[w]here a reasonable investor could not have been swayed by an alleged misrepresentation . . . a court may determine as a matter of law, that the alleged misrepresentation is immaterial." *Id.*

█ In their motions to dismiss, Defendants' argue that they did not make any misrepresentations in the Prospectus, and that the omissions alleged by Plaintiff are immaterial. In *Gateway 2000*, the Eighth Circuit listed the following reasons why an alleged misrepresentation or omission might be immaterial as a matter of law: 1) the matter might be common knowledge that a reasonable investor can be presumed to know or understand; 2) the misrepresentation or omission might be so insignificant that, "in the total mix of information, it simply would not matter to a reasonable investor"; 3) the statement might "be so vague and such obvious hyperbole" that a reasonable investor would not rely upon it; or 4) meaningful cautionary statements might render the misrepresentation or omission inconsequential in light of the "total mix" of information the document provides to investors. *Id.*, 122 F.3d at 546–548. In light of these considerations, each of Plaintiff's allegations will be addressed in turn.

### 1. Annual v. Quarterly Financial Results

Plaintiff alleges that Defendants improperly failed to disclose Electroscope's recurring quarterly net revenues for fiscal years ("FY") 1994, 1995, and 1996[2] in the Prospectus. Plaintiff argues that this omission was a material one because had the quarterly data been disclosed it would have revealed a downward trend in the Company's revenues which was not discernible from the annual figures that were actually presented. In support of his argument, Plaintiff points to SEC Regulation S–B Item 303 which mandates disclosure of "any known trends, events or uncertainties that have had ... a material impact on net sales or revenues or income from continuing operations." 17 C.F.R. § 228.303(b)(1)(iv). Plaintiff's argument, however, contains a number of unsupportable assumptions and critical flaws which prove fatal to this claim.

First, the Prospectus specifically delineates a "Risk Factor" devoted solely to the issue of fluctuations in quarterly results. The warning reads:

**Potential Fluctuations in Future Quarterly Results**

The Company expects that its operating results will fluctuate significantly from quarter to quarter in the future and will depend upon a number of factors, many of which are outside the Company's control. These factors include the extent to which the Company's Electroshield Monitoring System and related accessories gain market acceptance; the timing and size of purchases, if any, by Valleylab, which is not contractually obligated to purchase on a quarterly basis; investments by the Company in marketing, sales, research and development and administrative personnel necessary to support the Company's anticipated growth; and the ability of the Company to expand its market share and general economic conditions.

Prosp. at 6. This very specific and thorough cautionary warning renders Defendants' omission of the FY 1996 quarterly revenue data inconsequential to the "total mix" of information the document provided investors. *See Gateway 2000,* 122 F.3d at 548 (Rule 12(b)(6) dismissal should be granted under the "bespeaks caution" doctrine where the documents containing defendants' challenged statements or omissions include enough cautionary language or risk disclosure that reasonable minds could not disagree that the challenged statements or omissions were not misleading).

Second, registrants such as Electroscope are not required to disclose quarterly financial data. Defendants' annual net revenue disclosures were consistent with the regulations governing such disclosures in registration statements. SEC Regulation S–K Item 301 simply requires that registrants disclose financial data for "each of the last five *fiscal years,*" or the life of the registrant if less than five years, as well as "any additional *fiscal year* necessary to keep the information from being misleading." 17 C.F.R. § 229.301(a) (emphasis added).

Finally, contrary to Plaintiff's contention, there was no downward trend in Electroscope's revenues at the time of the IPO. The annual net revenues that were disclosed properly indicated an upward trend in revenue from $478,778 in FY 1994, to $1,084,226 in FY 1995, to $2,173,785 in FY 1996. Prosp. at 4. Furthermore, the quarterly net revenues that Defendants did not disclose reveal neither an upward nor downward trend. Electroscope's net revenues in FY 1996 went down from $528,366 in the first quarter to $479,350 in the second quarter, but rebounded to $823,000 in the third quarter before falling again to $343,069 in the fourth quarter. Only by inventing a "recurring revenue" theory, and thereby subtracting an arbitrary portion of the third quarter revenue generated by Electroscope's agreement with Valleylab, does Plaintiff come up with a downward trend in quarterly revenues.[3]

---

**2.** Electroscope's fiscal year runs from April 1 through March 31.

**3.** There is no valid reason to subtract Electroscope's sale to Valleylab from the third quarter net revenue figure for FY 1996, as Plaintiff does in his calculations. Plaintiff does not allege, and

there is no indication in the Prospectus, that Electroscope had any contracts which provided the Company with automatically "recurring revenue." Accordingly, the proceeds from the third quarter Valleylab sale represented net revenue

Plaintiff's reliance upon *In re NationsMart Securities Litig.*, 130 F.3d 309 (8th Cir.1997) is misplaced. In *In re NationsMart* the court held that the "bespeaks caution" doctrine did not warrant dismissal of the plaintiff's complaint because the warnings in the prospectus were generic, non-specific, and did not relate directly to the alleged material omissions. *Id.* at 317–18. In the instant case, Defendants' omission of quarterly revenues is immaterial because the Prospectus contained a specific warning about fluctuating quarterly revenues and the quarterly figures did not reveal a downward trend. Therefore, Plaintiff's allegation that Defendants improperly omitted from the Prospectus quarterly net revenue figures from FY 1996 fails to state a claim upon which relief can be granted under Section 11 or 12(a)(2).

### 2. The Valleylab Sale

Plaintiff alleges that Defendants failed to disclose in the Prospectus a one-time $400,000 "initial stock-in order" from its exclusive distributor, Valleylab, which occurred during the third quarter of FY 1996. Plaintiff contends that had the sale been disclosed as such it would have cast Electroscope's revenue growth in a materially different light. Again referring to SEC Regulation S–B Item 303, Plaintiff argues that Defendants were required to disclose the "non-recurring 'initial stock-in order'" by Valleylab because it constituted an event which had a material impact on Electroscope's net revenues. *See* 17 C.F.R. § 228.303(b)(1)(iv).

Defendants, however, adequately disclosed the $400,000 Valleylab purchase order in the "Notes to Financial Statements" section of the Prospectus. That section details the terms of the Distribution Agreement Electroscope signed with Valleylab in September 1995, including the $400,000 order Valleylab placed at that time. Prosp. at F–7 ("On September 8, 1995, the Company signed a distribution agreement with Valleylab Inc. ... pursuant to which Valleylab paid a non-refundable fee of $150,000, placed a non-cancelable purchase order for $400,000 of articulated electrosurgical instruments, and agreed to other terms and conditions, some of which are discussed below."). Defendants' failure to characterize Valleylab's order as a

"one-time" or "non-recurring" order does not represent a material misrepresentation. Such a characterization would have been incorrect given the nature of the relationship.

Although the Distribution Agreement requires that Valleylab make minimum annual purchases in order to maintain its status as Electroscope's exclusive distributor, the Agreement does not set any limits upon the amount or frequency of Valleylab orders. *See* Prosp. at 6 (The Company's operating results will depend upon "the timing and size of purchases, if any, by Valleylab ..."); Prosp. at 14 (Results will fluctuate "as a result of the size and frequency of sales to Valleylab. Some fluctuations may be significant ..."). Furthermore, the Prospectus specifically put investors on notice that the FY 1996 increase in revenues "was due to increased market acceptance and awareness of the Company's Electroshield Monitoring System ('EMS'), some of which may be attributed to the Company's arrangement with Valleylab, which has led to increased sales of the Company's EMS, electrosurgical instruments and adaptive sheaths, as well as the introduction of new products."

In support of his argument that the Valleylab order should have been labeled "one-time" or "non-recurring," Plaintiff mistakenly relies upon *Virginia Bankshares v. Sandberg*, 501 U.S. 1083, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991). In *Virginia Bankshares*, the Supreme Court held that disclosures are inadequate if it would take a financial analyst to understand them. *Id.* at 1097. Such is not the case here. Defendants specifically disclosed the Valleylab sale in question, as well as the fact that Electroscope's FY 1996 increase in revenues was due in part to its new relationship with Valleylab. Plaintiff's characterization of the sale as "one-time" or "non-recurring" is simply mistaken. *See supra*, n. 2. Given such clear disclosures, it would not take a financial analyst to understand that Electroscope's growth in revenues during FY 1996 were in part due to its new relationship with an exclusive distributor. Defendants' failure to label the $400,000 sale to Valleylab as a "one-time" or "non-recurring" initial stock in-order does not constitute

---

just like the proceeds from any other sale Electroscope made during 1996.

a misrepresentation, material or otherwise. Therefore, Plaintiff's second allegation does not support a Section 11 or 12(a)(2) claim upon which relief can be granted.

### 3. First Quarter FY 1997 Results

Plaintiff alleges that despite the fact that the first quarter of Electroscope's FY 1997 ended only three business days after the IPO, Defendants failed to disclose Electroscope's first quarter revenue figures. Plaintiff argues that those figures would have been viewed by a reasonable investor as having significantly altered the total mix of information available because they show a twenty-two percent decline in net revenue from the first quarter of FY 1996. In support of his claim, Plaintiff relies upon an instruction to SEC Regulation S–B Item 303 which requires that "the discussion and analysis ... focus specifically on material events and uncertainties known to management that would cause reported financial information not to be indicative of future operating results or of future financial condition." 17 C.F.R. § 228.303 n. 1. Plaintiff's claim is flawed for a number of reasons.

The SEC regulations require that financial information be updated only if the included financial statements are as of a date 135 days or more prior to the effective date of the registration statement. 17 C.F.R. § 210.3–12(a). Here, the Prospectus was effective as of June 25, 1996, and included financial information as of March 31, 1996, less than ninety days prior to the effective date. Plaintiff concedes in his memorandum that a Prospectus is not required to disclose projections. Pl. Memo. at 18. Instead, Plaintiff relies upon *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194 (1st Cir.1996) to support his claim that a prospectus must disclose known adverse facts.

In *Shaw*, the plaintiff alleged that the defendant "was in possession of information about the company's quarter-to-date performance (e.g., operating results) indicating some substantial likelihood that the quarter would turn out to be an extreme departure from publicly known trends and uncertainties." *Id.* at 82 F.3d at 1211. Given such an allegation, the court refused to dismiss the plaintiff's Section 11 claim. Here, however, Plaintiff makes no such allegation. The complaint is totally devoid of any allegations that Defendants knew of, had reason to know of, or possessed any quarter-in-progress information that was not disclosed in the Prospectus. In fact, Plaintiff specifically states in the complaint that none of his claims sound in fraud. Compl. at ¶¶ 50, 60, 67.

Additionally, had Defendants somehow been able to produce the FY 1997 first quarter figures in the Prospects,[4] no reasonable investor could have viewed them as an "extreme departure from publicly known trends and uncertainties" for two reasons. First, while the results were twenty-two percent lower than the first-quarter of FY 1996, they were twenty-three percent higher than the results from the immediately preceding quarter (fourth quarter of FY 1996). Second, the Prospectus contained a specific cautionary warning that quarterly results were bound to fluctuate given the fledgling nature of the enterprise. *See supra*, p. 7. Accordingly, Plaintiff's allegation concerning the first quarter FY 1997 results does not state a claim upon which relief can be granted.

### 4. Generation of New Products

Finally, Plaintiff alleges that Defendants materially misrepresented Electroscope's future prospects by failing to disclose an "imminent transition to a new generation of products" that was to begin only six days after the IPO. In response, Defendants contend that the Prospectus provides sufficiently specific warnings and cautionary statements concerning new product development, and that Electroscope did not introduce a "new product line" or "new products" on July 1, 1996, as Plaintiff contends.

Plaintiff's allegation concerning a new generation of products does not state a claim

---

**4.** As of June 25, 1996, the effective date of the Registration Statement, Electroscope's FY 1997 first quarter had not ended, and the results from that quarter were still a month away from being ready for disclosure. Electroscope announce partial results for the first quarter FY 1997 in a press release issued on July 22, 1996 (Comp. at ¶ 41), and filed its Form 10–Q for that quarter, including unaudited condensed financial statements for that quarter, on August 13, 1996 (Compl. at ¶¶ 4, 41).

upon which relief can be granted as it is based upon a misinterpretation of a statement made by Electroscope in its FY 1997 second quarter 10–Q. In the document filed on November 31, 1996, Electroscope stated the following:

> As a result of the Company's transition to a new generation of products designed to deal with human engineering issues and a delay in the completion of documentation necessary in conjunction with the Distribution Agreement, Valleylab will not meet its minimum purchase requirements for calendar year 1996, and the relationship will become non-exclusive in 1997.

Electroscope Form 10–QSB for the quarterly period ended September 30, 1996, at 10 (Schaefer Suppl.Aff., Ex. 1). Nowhere in that document did Electroscope say when the new generation of products was coming to market, and there is no indication that the new generation of products had come to the market on July 1, 1996, as Plaintiff contends. Rather, Electroscope merely explained in the 10–Q that a transition to a new generation of products was a factor in its forward-looking statement that Valleylab would not meet its minimum purchase requirements for calendar year 1996. Plaintiff's do not allege that Defendants were aware at the time of the IPO that there would be any particular difficulties with future product enhancements. Furthermore, given the fledgling nature of the enterprise, the fact that Electroscope might introduce enhancements or new variations of its products is something that the reasonable investor could be presumed to understand.

Plaintiff's claim also ignores the specific statements and warnings in the Prospectus which relate directly to the introduction of new products. In fact, Defendants devoted an entire "Risk Factor" to the subject. The factor reads in relevant part:

> **Dependence on New Product Development**
>
> The Company's future success and financial performance will depend in part on the Company's ability to meet the increasingly sophisticated needs of customers through the timely development and successful introduction of product upgrades, enhancements and new products.... While the Company is currently developing new products and enhancing its existing product lines, there can be no assurance that the Company will be successful in completing the development of such new products or enhancements.... There can be no assurance that the Company will be successful in developing and marketing product enhancements or new products that respond to technological changes or evolving industry standards, that the Company will not experience difficulties that could delay or prevent the successful development, introduction and marketing of those products, or that its new products and product enhancements will adequately meet the requirements of the marketplace and achieve market acceptance....

Prosp. at 8. From this disclosure alone, it is obvious to any reasonable investor that Electroscope anticipated the continuing evolution of its products, and that any particular enhancement or new product carried with it certain risks. Accordingly, Plaintiff's Counts I and II fail to state claims upon which relief can be granted under either Section 11 or 12(a)(2) of the 1933 Act.

## C. Count III

In Count III, Plaintiff alleges that, as a controlling person of Electroscope, Defendant Odell is liable jointly and severally with the Company under Section 15 of the 1933 Act for the Company's violations of Section 11. Because the Court concludes that Plaintiff has failed to state an actionable claim against the Company under Section 11, the Court will likewise dismiss Count III against Defendant Odell.

## D. Leave to Amend

Plaintiff requests leave to amend his complaint if any of Defendants' motions to dismiss are granted, in whole or in part. Such an amendment, however, would be futile in light of the Court's conclusion that none of the alleged misrepresentations contained in Plaintiff's complaint are material ones. Furthermore, Plaintiff does not provide any reason for failing to amend his complaint prior to its dismissal. Given the circumstances, Plaintiff's request for leave to amend the complaint is denied. *See Gateway 2000*, 122 F.3d at 550–51.

### IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motions to Dismiss [Docket Nos. 14 and 23] are **GRANTED**.

2. Plaintiff's Complaint is **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**