**INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 70, Plaintiff,**

v.

**NATIONAL LABOR RELATIONS BOARD, Defendant.**

**Civil No. 3–96–10.**

United States District Court,
D. Minnesota,
Third Division.

June 17, 1996.

---

Gregg M. Corwin, Gregg M. Corwin & Associates, Saint Louis Park, MN, and Patricia E. Kuderer, Hoff, Barry & Kuderer, P.A., Eden Prairie, MN, of counsel, for Plaintiff.

Margery E. Lieber, Assistant General Counsel for Special Litigation, Eric G. Moskowitz, Deputy Assistant General Counsel, Paul A. Ades, Attorney, and Marlin O. Osthus, Supervisory Attorney, National Labor Relations Board, Washington, D.C., for Defendant.

## MEMORANDUM OPINION & ORDER

KYLE, District Judge.

### Introduction

Before the Court is Defendant's Motion to Dismiss for lack of jurisdiction and for failure to state a claim upon which relief may be granted. For the reasons set forth below, Defendant's Motion will be granted.

### Background

Plaintiff International Union of Operating Engineers Local 70 ("the Union") is the exclusive collective bargaining representative of the food service workers employed by the Farmington, Minnesota School District ("the District"). Compl. ¶ V. On June 14, 1993, the District entered into a contract with ARAMARK Corporation ("ARAMARK"), under which ARAMARK would provide management services for the District's food service program. *Id.* ¶ VIII. After the contract was executed, any job vacancy that occurred through attrition of District food service workers was posted as an "ARAMARK" job. *Id.* ¶ X. Such ARAMARK workers are not currently covered under the collective bargaining agreement between the District and the Union. *Id.* ¶ XI. At the time of the filing of the Complaint, fourteen employees were classified as "District" food service workers, down from twenty-four at the time of the contract's implementation. *Id.* ¶¶ IX, XXIII.

On March 13, 1995, the Union sought to accrete the food service workers employed directly by ARAMARK to the unit of food service workers already represented by the Union. *Id.* ¶ XXIV. At the hearing conducted before the Bureau of Mediation Services in August 1995, ARAMARK petitioned to intervene in the action and was successful in removing the case to the National Labor Relations Board ("the Board"). *Id.* ¶ XXIV. On October 18, 1995, the Regional Director for Region 18 of the Board determined that ARAMARK was an "employer" of the food service employees on its payroll under the National Labor Relations Act ("NLRA") and asserted jurisdiction. *Id.* ¶ XXVI. The Union's request for review of this determination was denied. *Id.* ¶¶ XXVII, XXVIII. In an election held among the ARAMARK workers

on December 13, 1995, a majority did not vote for union representation, and the Regional Director certified that the ARAMARK workers were not to be represented by a union for collective bargaining purposes. *See* Def.'s Mem. of Law in Supp. of Mot. to Dismiss 5 & n. 4.

The Union filed its Complaint in this Court on January 4, 1996. It alleges that the Board improperly exercised its jurisdiction over employees of a state subdivision (the District), since the workers "employed" directly by ARAMARK are in reality employed by the District. *Id.* ¶¶ XXX–XXXII.[1] The Union also alleged that the Board's assertion of jurisdiction over the ARAMARK workers violated the District's Eleventh Amendment immunity. *Id.* ¶¶ XXXV–XXXVIII. The Union has since withdrawn its claim of Eleventh Amendment violations in Count II of the Complaint. Pl.'s Mem. of Law in Opp'n to Mot. to Dismiss 4.

## Analysis

### I. Motion to Dismiss Standards

On a motion to dismiss for failure to state a claim, the pleadings are construed in the light most favorable to the plaintiff, and the allegations in the complaint must be taken as true. *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 445 (8th Cir.1995) (citing *Ruge v. City of Bellevue*, 892 F.2d 738, 739 (8th Cir.1989)); *see also Ossman v. Diana Corp.*, 825 F.Supp. 870, 879–80 (D.Minn.1993) (and cases cited therein). The Court must resolve any ambiguities concerning the sufficiency of the claims in favor of Plaintiff, and give them the benefit of "every reasonable inference" drawn from the "well-pleaded" facts and allegations in the Complaint. *Ossman*, 825 F.Supp. at 880 (quoting *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n. 6, 83 S.Ct. 1461, 1465 n. 6, 10 L.Ed.2d 678 (1963)).

However, when considering a challenge to its subject matter jurisdiction, a court must distinguish between a "facial attack" and a "factual attack." *Osborn v. United States*, 918 F.2d 724, 729–30 n. 6 (8th Cir.1990). A facial attack questions the sufficiency of the pleading itself—a court reviews such an attack by examining only the pleadings, and utilizes the same standards favorable to the non-moving party as on a Rule 12(b)(6) motion to dismiss. *Id.; Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990). A factual attack is based on a factual controversy which must be resolved in order to determine whether subject matter jurisdiction does or does not exist. *Id.* In reviewing a factual attack, a court must normally go outside of the pleadings, and the protections granted to the non-moving party under Rule 12(b)(6) do not apply. *Smith v. Babbitt*, 875 F.Supp. 1353, 1359 (D.Minn.1995). The current situation is akin to a facial attack, as the primary question for jurisdictional purposes is whether the Board has violated a clear and mandatory provision of the NLRA, as observed below.

### II. District Court Jurisdiction

#### A. The General Rule

The Board's representation proceedings are governed by 29 U.S.C. § 159. Under this section, the Board has authority to investigate election petitions, hold evidentiary hearings to determine employer and employee status, and the like. If the Board determines that the NLRA's prerequisites for holding a representation election have been satisfied, the Board is directed to conduct an election and certify the results. 29 U.S.C. § 159(c)(1). However, the NLRA's provisions may not be applied to those exempted from the definition of "employer"—this includes all states and their political subdivisions. 29 U.S.C. § 152(2). The Union notes that the District is a political subdivision of

---

1. The Complaint sets out various facts designed to show that the District, not ARAMARK, is the true employer of all of the food service workers. For example, workers employed directly by ARAMARK have the same responsibilities and duties as those employed by the District, are subject to the regulations of the District while on duty, and receive wages in accordance with the collective bargaining agreement between the District and the Union. *Id.* ¶¶ XV, XVII, XVIII. The district also has authority to approve which ARAMARK workers may work on the District's premises, to set the days and hours of work of ARAMARK workers, and to order ARAMARK to take various personnel actions. *Id.* ¶¶ XIX, XX, XXI.

Minnesota and thus is exempt from the NLRA.[2] The Union claims that, in asserting jurisdiction over the ARAMARK workers, the Board was in fact asserting jurisdiction over public employees in violation of the NLRA.

■ Both parties acknowledge that, as a general rule, Board orders regarding representation proceedings are not directly reviewable by district courts. Pl.'s Mem. in Opp'n 4; Def.'s Mem. 6–8. Orders concerning representation issues are within the exclusive jurisdiction of the Board. *See Minn–Dak Farmers Coop. Employees Org. v. Minn–Dak Farmers Coop.*, 3 F.3d 1199, 1201 (8th Cir.1993) (citing *International Bhd. of Elec. Workers v. Iowa Elec. Light & Power Co.*, 668 F.2d 413, 416, 420 (8th Cir.1982)). Judicial review of such orders is available only indirectly—if an employer refuses to bargain with a Board-certified employee representative, it commits an unfair labor practice subject to judicial review in the courts of appeals. *See* 29 U.S.C. §§ 160(e), (f); *Waverly–Cedar Falls Health Care Ctr. v. NLRB*, 933 F.2d 626, 628 (8th Cir.1991) (citations omitted); *University of Vermont v. State of Vt.*, 748 F.Supp. 235, 238–39 (D.Vt. 1990) (noting that Congress intended circuitous review process based on legislative history of NLRA).

### B. The *Leedom v. Kyne* Exception

In *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), the Supreme Court created an exception to the general rule which allows no direct district court jurisdiction of the Board's certification proceedings. In that case, the Board included both professional and non-professional employees in a collective bargaining unit, without conducting a vote among the professional employees. The plain language of 29 U.S.C. § 159(b)(1) bars the Board from certifying a collective bargaining unit if it includes both professional and non-professional employees unless a majority of professional employees have voted for inclusion in the unit. The Court affirmed the district court's jurisdiction to vacate the Board order, stating that:

> This suit is not one to "review," in the sense of that term as used in the Act, a decision of the Board made within its jurisdiction. Rather it is one to strike down an order of the Board made in excess of its delegated powers and contrary to a specific prohibition in the Act.

358 U.S. at 188, 79 S.Ct. at 184.

■ The Union has requested this Court's review under this exception. It claims that the Board's determination in this case, and in many other situations involving dual public and private employers, is contrary to a specific prohibition in the Act which exempts states and their subdivisions from the NLRA's coverage.

### C. Interpretations of *Leedom v. Kyne*

Six years after the *Kyne* decision, the Supreme Court emphasized the "narrow limits" of the exception in *Boire v. Greyhound Corp.*, 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964).[3] In *Boire*, the NLRB was presented with a situation of two employers—one employer ("Floors") hired, paid, disciplined, transferred, promoted and discharged the employees, while the other ("Greyhound") took part in establishing work schedules and in directing the employees' work, among other tasks. Floors had contracted with Greyhound to provide its services at four bus terminals in Florida. The Board determined that Floors and Greyhound were joint employers and directed a representation election to be held, even though Greyhound denied that it was an "employer" under the NLRA. Greyhound filed suit in district court, which took jurisdiction under *Kyne* and permanently restrained the election.

---

**2.** States and their political subdivisions are, of course, free to enter into collective bargaining agreements with their workers if they so choose.

**3.** Lower courts have also emphasized the restricted scope of district court review. The limits of *Kyne* jurisdiction have been described as "nearly insurmountable" by the District of Columbia Circuit, which has emphasized that district court jurisdiction depends on finding a *"specific provision"* that, *"in clear and mandatory* terms, prohibits" the action by the Board. *United States Dept. of Justice v. FLRA*, 981 F.2d 1339, 1343 (D.C.Cir.1993) (emphasis in original). *See also, e.g., Griffith v. FLRA*, 842 F.2d 487, 493 (D.C.Cir.1988) (and cases cited therein).

Greyhound argued that since the NLRA excluded independent contractors from the definition of "employee," and since Floors paid, hired, transferred, and promoted the employees as an independent contractor, the NLRB's action was plainly in excess of its statutory powers. The district court held that the Board's findings were insufficient to establish a joint employer relationship as a matter of law, and that the Board had thus violated the NLRA by attempting to conduct a representation election where no employment relationship existed. 376 U.S. at 475–76, 84 S.Ct. at 895–96.

The Supreme Court reversed, finding that the *Kyne* exception did not apply and that the district court did not have jurisdiction. The Supreme Court responded to Greyhound's contentions that it was not a joint employer and that Floors was an independent contractor exempted from the NLRA in the following language:

> Whether Greyhound, as the Board held, possessed sufficient control over the work of the employees to qualify as a joint employer with Floors is a question which is unaffected by any possible determination as to Floors' status as an independent contractor, since Greyhound has never suggested that the employees themselves occupy an independent contractor status. And whether Greyhound possessed sufficient indicia of control to be an "employer" is essentially a factual issue, unlike the question in *Kyne*, which depended solely upon construction of the statute. The *Kyne* exception is a narrow one, not to be extended to permit plenary district court review of Board orders in certification proceedings whenever it can be said that an erroneous assessment of the particular facts before the Board has led it to a conclusion which does not comport with the law. Judicial review in such a situation has been limited by Congress to the courts of appeals, and then only under the condi-

tions explicitly laid down in § 9(d) of the Act.

376 U.S. at 481, 84 S.Ct. at 899.

Here, whether the District possesses sufficient indicia of control over the employees is a factual issue, and this case is thus dissimilar to *Kyne* and similar to *Boire*.[4] In order to determine if the ARAMARK employees should be considered employees of a political subdivision, and if the Board's action will thus force the District into collective bargaining in violation of the NLRA, numerous factual determinations would have been warranted under the "control" test previously used by the Board. *See, e.g., Hartz Mountain Corp. v. Dotson,* 727 F.2d 1308, 1311 (D.C.Cir.1984); *Physicians Nat'l House Staff Ass'n v. Fanning,* 642 F.2d 492, 496 (D.C.Cir. 1980), *cert. denied,* 450 U.S. 917, 101 S.Ct. 1360, 67 L.Ed.2d 342 (1981).[5] As noted below, however, the Board has held that it is no longer necessary to examine indicia of "control" in making its jurisdictional decisions.

### D. The Board's Jurisdiction Under the "Control" Test

The Union's claim of error goes deeper than the individual factual scenario involved here. The Union's grievance concerning the NLRB's assertion of jurisdiction here may be traced to the NLRB's new rule for defining an "employer," announced in *Management Training Corporation,* 317 N.L.R.B. 1355, 1995 WL 451936 (1995). Under its new test, the NLRB considers only whether a putative employer meets the definition of "employer" in 29 U.S.C. § 152(2) when deciding whether to assert jurisdiction.

Previously, the NLRB would also consider, in the case of dual employers (one exempt and one non-exempt), the scope and degree of control exercised by the exempt entity over the non-exempt employer's labor relations. The "control test" was designed to see if meaningful bargaining between the em-

---

4. Another distinction between *Kyne* and this case is that, in *Kyne,* the Board admitted that it had violated the NLRA.

5. The "control" test required that a non-exempt employer retain sufficient control over the employment relationship to engage in meaningful collective bargaining; in other words, an exempt

employer cannot control too much of the relationship. If an exempt employer had too much control, forcing the non-exempt employer to bargain would be largely a futile exercise. *See, e.g., R.W. Harmon & Sons, Inc. v. NLRB,* 664 F.2d 248, 251 (10th Cir.1981).

ployees and the non-exempt employer would be possible without the exempt entity's involvement. "The Board has long extended this exemption to private employers providing services for exempt political subdivisions, where the exempt entity effectively controls the primary employment terms." *ARA Servs. Inc. v. NLRB,* 71 F.3d 129, 131–32 (4th Cir.1995). Before *Management Training Corporation,* the Board routinely declined to assert jurisdiction when an exempt subdivision directly controlled wage and benefit levels and other employment terms. *Id.* at 132, 133. The Board refuted its previous position in the following language:

> [W]e ... have decided that jurisdiction should no longer be determined on the basis of whether the employer or the Government controls most of the employee's terms and conditions of employment. Nor should the Board be deciding as a jurisdictional question which terms and conditions of employment are or are not essential to the bargaining process.

317 N.L.R.B. at 1357.

The Fourth Circuit recently noted the impact of this change:

> Under the new rule, the Board will assert jurisdiction over employers even if control over the basic employment terms lies with a statutorily exempt political subdivision. The Board's whole basis for refusing jurisdiction in such situations prior to *Management Training* however, was that the assertion of jurisdiction would conflict with the policies underlying the statutory exemption.

*ARA Services,* 71 F.3d at 136.

The Union contends that this shift, both in general and as applied here, represents an exercise of jurisdiction that is in direct violation of the NLRA. It argues that, since the test does not take into account the amount of control exercised by the exempt entity (the District), it must necessarily violate the political subdivision exemption; as a consequence, this Court may invalidate the test here as a matter of law, without interfering with factual determinations by the Board. The Union asserts that courts have recognized that the Board would violate its statutory jurisdiction if it did not employ the control test in the context of two putative employers, one exempt and one non-exempt. The Board responds that it has not violated a clear prohibition in the NLRA, but has merely changed its mind as to the proper interpretation of "employer," as it is authorized to do, since the previous interpretation of employer was formed at the discretion of the Board.

On its face, the new test in *Management Training Corporation* does not violate a clear and specific mandate of the NLRA—indeed, it tracks the NLRA: "[I]n determining whether the Board should assert jurisdiction, the Board will only consider whether the employer meets the definition of "employer" under Section 2(2) of the Act, and whether such employer meets the applicable monetary jurisdictional standards." 317 NLRB at 1358 (footnote omitted). Yet the application of this standard will undoubtedly shrink the traditional protections of the political subdivision exemption. The Board does not contend that it can exercise jurisdiction over the District if the District were the sole employer of the workers. That would likely represent a clear jurisdictional violation of the NLRA, to which the *Kyne* exception would apply. The question is whether this shrinkage violates a clear provision of the NLRA, or merely signifies the abandonment of an administrative interpretation which the Board has the discretion to follow or disregard. In other words, this Court is asked to determine whether the Board has violated *statutory* rules of jurisdiction or *discretionary* rules regarding the exercise of that jurisdiction.

The Union contends that the Supreme Court held that the proper statutory standard for determining employer status was who controlled the wages, hours, and promotion of the employees, and who bore the burden and reaped the benefit of the hours worked in *NLRB v. E.C. Atkins & Co.,* 331 U.S. 398, 414, 67 S.Ct. 1265, 1273, 91 L.Ed. 1563 (1947).

In that case, the Supreme Court, far from defining a rigid, mandatory standard for the Board to follow, emphasized the *discretion* of the NLRB in determining who an "employer" is.

... Congress has not attempted to spell out a detailed or rigid definition of an employee or of an employer ... [T]he terms "employee" and "employer" in this statute carry with them more than the technical and traditional common law definitions....

And so the Board, in performing its delegated function of defining and applying these terms, must bring to its task an appreciation of economic realities, as well as a recognition of the aims which Congress sought to achieve by this statute. This does not mean that it should disregard the technical and traditional concepts of "employee" and "employer." But it is not confined to those concepts. It is free to take account of the more relevant economic and statutory considerations.

331 U.S. at 403, 67 S.Ct. at 1268–69.

Later in the opinion, placing the "standard" quoted by the Union in context demonstrates that the Board's power to define an "employer" was not intended to be limited by the Court:

In this setting, it matters not that respondent was deprived of some of the usual powers of an employer, such as the absolute power to hire and fire the guards and the absolute power to control their physical activities in the performance of that service. Those are relevant but not exclusive indicia of an employer-employee relationship under this statute. As we have seen, judgment as to the existence of such a relationship for purposes of this Act must be made with more than the common law concepts in mind. That relationship may spring as readily from the power to determine the wages and hours of another, coupled with the obligation to bear the financial burden of those wages and the receipt of the benefits of the hours worked, as from the absolute power to hire and fire or the power to control all the activities of the worker. In other words, where the conditions of the relation are such that the process of collective bargaining may appropriately be utilized as contemplated by the Act, the necessary relationship may be found to be present.

331 U.S. at 413–14, 67 S.Ct. at 1273 (citation omitted). In the last sentence, the Supreme Court notes that the focus of the Board's inquiry must be whether the employment relationship is amenable to the NLRA's collective bargaining process, although the opinion does indicate that the relevant criteria revolve around aspects of control.

In *Mayflower Contract Services, Inc. v. NLRB*, 982 F.2d 1221 (8th Cir.1993), the other case cited by the Union, the Eighth Circuit did not set jurisdictional standards for the NLRB. The question in *Mayflower* was whether the NLRB had abused its discretion to assert jurisdiction over a private entity which shared control with governmental subdivisions. To determine the answer, the Eighth Circuit looked to the NLRB's "own rules" in determining their jurisdiction. *Id.* at 1223. Other courts have recognized that the NLRB-created rules designed to help it determine when to exercise jurisdiction are discretionary, and are mainly rules of "prioritization." *See, e.g., NLRB v. Kemmerer Village, Inc.*, 907 F.2d 661, 663 (7th Cir.1990) ("the Board is bound by its own rules until it changes them ... including the rules that it has adopted in order to channel what would otherwise be an essentially unreviewable discretion in the deployment of its limited prosecutorial resources ..."). Those rules have changed.

Aside from *Atkins* and *Mayflower*, courts and the Board itself have offered conflicting views over whether the control test represents a firm jurisdictional limit. It is undisputed that the "control" test originates from the Board and not from the NLRA itself. Thus, some courts have appeared to treat the test as a *discretionary* limit on the NLRA's jurisdiction. *See, e.g., Kemmerer Village*, 907 F.2d at 663; *Museum Assocs. v. NLRB*, 688 F.2d 1278, 1280 (9th Cir.1982) ("There are cases where the board and courts have declined to extend jurisdiction in situations where a government funded or regulated employer lacks sufficient autonomy over working conditions to enable it to bargain efficaciously with the Union."); *NLRB v. St. Louis Comprehensive Neighborhood Health Ctr., Inc.*, 633 F.2d 1268, 1270 (8th Cir.1980), *cert. denied*, 454 U.S. 819, 102 S.Ct. 99, 70 L.Ed.2d 89 (1981) (discussing Board's "new

standard for determining when jurisdiction should be exercised"); *Herbert Harvey, Inc. v. NLRB,* 424 F.2d 770, 781 (D.C.Cir.1969) (discussing Board's ability to strike balance between congressional policies through decisions to assert jurisdiction).

On the other hand, some courts have treated the control test, although originating from the Board, as a *mandatory* limit on the Board's jurisdiction under the NLRA. "Courts have interpreted section 2(2) to prohibit the Board from asserting jurisdiction over private employers that perform services for exempt governmental entities if the employer does not 'retain sufficient control over the employment relationship to engage in meaningful collective bargaining.'" *R.W. Harmon & Sons, Inc. v. NLRB,* 664 F.2d 248, 251 (10th Cir.1981) (citations and quotation omitted); *Board of Trustees of Mem. Hosp. v. NLRB,* 624 F.2d 177, 185 (10th Cir.1980) ("The governmental subdivision's substantial control over the labor relations policy of the party contracting with the governmental agency requires the Board to decline to assert jurisdiction."); *NLRB v. Austin Dev. Ctr., Inc.,* 606 F.2d 785, 789 (7th Cir.1979) ("Where a private employer, because of a contract with an exempt entity, retains so little control over its own labor relations that it cannot engage in meaningful collective bargaining, section 2(2) has been held to deprive the Board of jurisdiction because the exempt entity is deemed the true employer."). At least one court has observed that the control test for the Board's statutory jurisdiction and the discretionary exercise of that jurisdiction are essentially the same. *Jefferson County Comm. Ctr. for Developmental Disabilities, Inc. v. NLRB,* 732 F.2d 122, 126 (10th Cir.), *cert. denied,* 469 U.S. 1086, 105 S.Ct. 591, 83 L.Ed.2d 701 (1984).

The Board itself has formerly applied the control test and consequently determined that it is *precluded* from asserting jurisdiction. *See, e.g., Mississippi City Lines,* 223 N.L.R.B. 11, 1976 WL 7883 (1976); *Chicago Youth Centers,* 221 N.L.R.B. 1146, 1147, 1975 WL 6553 (1975); *Transit Sys., Inc.,* 221 N.L.R.B. 299, 1975 WL 6416 (1975); *Ara Servs., Inc.,* 221 N.L.R.B. 64, 65, 1975 WL 6378 (1975); *Ohio Inns, Inc.,* 205 N.L.R.B.

528, 1973 WL 5153 (1973). Yet the *Management Training Corporation* decision effectively nullifies these precedents:

The [non-exempt] Employer in question must, by hypothesis, control some matters relating to the employment relationship, or else it would not be an employer under the Act. In our view, it is for the parties to determine whether bargaining is possible with respect to other matters and, in the final analysis, employee voters will decide for themselves whether they wish to engage in collective bargaining under these circumstances.

317 N.L.R.B. at 1358.

▮ Essentially, the Court's review of the above precedent reveals that the Fourth Circuit's recent conclusion in *Ara Services* is both complete and accurate: "[T]here exists a question as to the new standard's statutory validity." 71 F.3d at 136. But the Court, under the *Kyne* exception, cannot base a finding of a violation of the NLRA's jurisdictional provisions on judicial precedent. The Board's action must have violated a clear provision of the NLRA *itself*—if courts are needed to interpret the provisions, and to determine how certain provisions should interact, it is difficult indeed to find that a clear and mandatory provision has been violated. Clearly, the argument cannot be made that any exercise of jurisdiction by the NLRB over dual public and private employers clearly violates the language of the NLRA. Even under its previous test, its exercise of jurisdiction over dual private and public employers was upheld by courts. *See, e.g., Kemmerer Village,* 907 F.2d at 663–64; *see also NLRB v. St. Louis Comprehensive Neighborhood Health Ctr., Inc.,* 633 F.2d at 1270; *Herbert Harvey, Inc.,* 424 F.2d at 781.

Therefore, this suit is one for " 'review,' as that term is used in the Act," unlike the situation in *Kyne.* The Board has in this case exercised its jurisdiction over ARA-MARK, an entity it has determined to be a private employer. In doing so, the Board did not "use [ ] a power that Congress ha[s] expressly denied it," also unlike *Kyne. United States Dept. of Interior v. FLRA,* 1 F.3d 1059, 1062 (10th Cir.1993). The NLRA does not describe how the Board should handle

the situation where one putative employer is exempt and the other is not. While some judicial decisions may support the theory that the Board's abandonment of the control test represents an impermissible extension of jurisdiction in dual employment situations, no clear and mandatory provision of the NLRA has been violated.[6] If ARAMARK workers eventually agree to collective representation, the District may refuse to bargain with the employees' union, and thus seek indirect review of the Board's decision in the appellate courts, as contemplated by the NLRA. The question, however, is not fit for resolution in this Court.

### Conclusion

Accordingly, based on all of the files, records, and proceedings therein, Defendant's Motion to Dismiss (Doc. No. 3) is **GRANTED**; this action is **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

---

**6.** As noted previously, the *Kyne* exception might well apply here if the Board were asserting jurisdiction over the *District*. It has not done so; it has asserted jurisdiction over ARAMARK, which no party appears to dispute qualifies as an "employer" under the plain language of the NLRA. Accepting the Union's argument that asserting jurisdiction over ARAMARK is essentially the same thing as asserting jurisdiction over the District requires an inferential step which leads the Court away from the language of the NLRA and is not contemplated under the narrow *Kyne* exception.